**In re STARKEY et al., Alleged Dependent Children.**

[Cite as *In re Starkey,* 150 Ohio App.3d 612, 2002-Ohio-6892.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 01 CA 223.

Decided Dec. 11, 2002.

Wade Smith Jr., for appellee Mahoning County Children Services.

Mark Carfolo, for appellant Erycka Fletcher.

---

VUKOVICH, Presiding Judge.

{¶ 1} Appellant Erycka Fletcher appeals the decision of the Mahoning County Juvenile Court that granted permanent custody of five of her six children to appellee Children Services Board. We are presented with the following issues: whether CSB presented clear and convincing evidence that permanent custody is in the children's best interests and that the children could not or should not be placed with either parent within a reasonable time; whether reasonable efforts toward reunification were required, and if so, whether they were made; and whether service on the putative fathers was sufficient to give the juvenile court jurisdiction. For the following reasons, the decision of the trial court is affirmed.

## STATEMENT OF THE CASE

{¶ 2} In 1994, appellant's oldest three children, Jaquala (born August 1988), Michelle (born September 1990), and Eryck (born February 1992), were placed into the legal custody of their grandmother by order of the court. Michelle and Eryck apparently returned to appellant's physical custody in 1997, and in 2000, appellant's status as their custodian was approved by the court. (Jaquala lives with her father in Columbus, and her custody is not an issue in this case.)

{¶ 3} In June 1998, appellant gave birth to Jewel. In June 1999, she gave birth to Harold. In May 2000, she gave birth to Terrell, who appears to be her sixth child. Terrell was born addicted to cocaine, and appellant gave temporary custody of Terrell to CSB soon after his birth. In November 2000, appellant gave interim custody of Michelle, Eryck, Jewel, and Harold to CSB. The children were thereafter found to be dependent.

{¶ 4} On April 5, 2001, CSB filed a motion for permanent custody of Michelle, Eryck, Jewel, Harold, and Terrell. A hearing was set for May 3, 2001. Jewel's alleged father was personally served, and he appeared at that hearing. Michelle's alleged father was served by publication; Eryck's father, whose paternity was established in 1992, was served by publication; and the alleged father of Harold and Terrell was also served by publication. At this hearing, the magistrate realized that a guardian ad litem had been appointed only for Terrell; thus, the hearing was continued. Counsel were appointed for appellant and the four men.

{¶ 5} The hearing on permanent custody took place on October 8, 2001. The magistrate's decision was released on November 1, 2001. The magistrate found that CSB had made reasonable efforts toward reunification and also found that

these efforts had not been required. The magistrate noted that appellant had failed to meet her case plan goals. For instance, she did not obtain stable housing, and in fact, CSB was unaware of her whereabouts for most of the period of temporary custody. Additionally, she did not complete a mental health assessment. Furthermore, she did not receive drug treatment. She canceled many scheduled appointments.

{¶ 6} Her only evidence on treatment was an assessment that occurred the day before the hearing. Appellant admits that she is addicted to drugs, especially cocaine, which she last used two days before the hearing. Finally, appellant infrequently visited the children while they were in temporary custody; twice she failed to visit for more than 90 days. The magistrate found that the children could not or should not be placed with either parent within a reasonable time, that living with their mother would be contrary to their best interests, and that granting CSB permanent custody would be in the best interests of the children. Appellant did not object to the magistrate's decision.

{¶ 7} On November 21, 2001, the trial court reviewed the decision and found that no error of law or other defect appeared on the face of the decision. The court thus adopted the decision as the final order of the court and attached that decision to its journal entry. Appellant filed a timely notice of appeal from the trial court's entry; however, the notice of appeal erroneously stated that it was from the court's finding appellant guilty. Thus, appellant filed an amended notice of appeal. Her counsel then withdrew from representation, and this court appointed new appellate counsel. Appellant's first extension of time to file a brief was granted upon request and was to be final leave; this court noted that the appeal was expedited and would be dismissed if the brief was not timely filed. The second extension was then granted on grounds that appellate counsel could not locate the transcript of proceedings. Appellant's brief was filed with leave on July 29, 2002. CSB was granted one extension due to its allegation that appellant failed to serve a copy of its brief on the agency. CSB's brief was filed September 12, 2002.

## ASSIGNMENT OF ERROR NUMBER ONE

{¶ 8} Appellant's first assignment of error contends:

{¶ 9} "The trial court erred in granting the Mahoning County Children's Services' motion for permanent custody as it was against the manifest weight of the evidence."

{¶ 10} The court found that CSB used reasonable efforts to reunify the family. The court also checked a box stating that reasonable efforts were not required. Appellant contests these alternative decisions. Appellant also argues

that CSB failed to present clear and convincing evidence that permanent custody was in the children's best interests and that the children should not or could not be placed with either parent within a reasonable time.

{¶ 11} As mentioned, appellant did not file objections to the magistrate's decision. Hence, the trial court was required to review the magistrate's decision only to determine whether there was an error of law or other defect on the face of that decision. Juv.R. 40(E)(4)(a). "A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion." Juv.R. 40(E)(3)(b). Thus, most of appellant's arguments are not addressable. See, e.g., *In re Pittman*, 9th Dist. No. 20894, 2002-Ohio-2208, 2002 WL 987852, at ¶ 14 and 65; *In re Patterson* (Feb. 20, 2002), 9th Dist. No. 20817, at 4, 2002 WL 242112.

{¶ 12} Even if we review appellant's arguments presented under this assignment of error, we cannot find in her favor. The arguments on whether CSB had to and did use reasonable efforts and whether the children could not or should not be placed with either parent within a reasonable time are both without merit. Regardless of the fact that the court found that CSB did use reasonable efforts and that the children could not be placed with either parent in the near future, neither of these findings had to be made due to the fact that the caseworker testified that appellant failed to visit her children for more than 90 days two different times. "For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011.

{¶ 13} Pursuant to R.C. 2151.414(B)(1), the court may grant permanent custody to CSB if the court determines by clear and convincing evidence that it is in the best interests of the child and that one of the following apply: (a) the child is not abandoned or orphaned or has not been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period and the child cannot or should not be placed with either parent within a reasonable time; (b) the child is abandoned; (c) the child is orphaned; or (d) the child has been in temporary custody for at least 12 months of a consecutive 22-month period. Thus, if the child has been in temporary custody for this time period, as Terrell has, the court need not determine whether the child cannot or should not be placed with either parent. See *In re Nice* (2001), 141 Ohio App.3d 445, 751 N.E.2d 552. More important, if the child is abandoned, then the court likewise need not make the reunification determination, regardless of temporary custody. R.C. 2151.414(B)(1)(b). See, also, R.C. 2151.414(E)(10). Therefore, in its application of R.C. 2151.414(B)(1), the court was required to determine only best interests, which will be discussed below.

{¶ 14} Under R.C. 2151.419(A)(1), at a hearing held where the court removes a child from his home, the court shall determine whether the agency has made reasonable efforts to prevent the removal, or to eliminate continued removal, or to make it possible for the child to return home. Although the agency has the burden of proving it made those reasonable efforts, in determining whether the agency engaged in reasonable efforts, the child's health and safety are paramount. R.C. 2151.419(A)(1). However, the court shall determine that reasonable efforts are not required if any of the various listed circumstances exist. R.C. 2151.419(A)(2). One of these circumstances is that the parent from whom the child was removed has abandoned the child. R.C. 2151.419(A)(2)(d).

{¶ 15} Hence, because the agency proved and the court found that the children were abandoned, the court was not required to determine whether the agency used reasonable efforts to reunify or whether the child could not or should not be placed with either parent within a reasonable time. Appellant does not take issue with the court's finding that she abandoned her children under the R.C. 2151.011(C) definition. Accordingly, these arguments are without merit.

{¶ 16} The remaining argument is that the court did not have before it clear and convincing evidence that permanent custody would be in the children's best interests and thus its decision was against the manifest weight of the evidence. Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence but less than proof beyond a reasonable doubt and that which will produce in the mind of the fact-finder a firm belief or conviction as to the facts sought to be established. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. In conducting our review, we may not substitute our judgment for that of the trier of fact if there is competent and credible evidence to establish the children's best interests. See, e.g., *In re Wingo* (2001), 143 Ohio App.3d 652, 660, 758 N.E.2d 780; *Jones v. Lucas Cty. Children Serv. Bd.* (1988), 46 Ohio App.3d 85, 86, 546 N.E.2d 471. If evidence can be interpreted in two opposing ways, either one of which is fairly reasonable, we may not reverse merely because we would have ruled the other way because that other way seems more tolerant. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.

{¶ 17} In determining best interests, the court shall consider the relevant factors, including, but not limited to, those listed in R.C. 2151.414(D)(1) through (5). These factors include (1) the interaction and interrelationship of the child with his parents, siblings, and other significant persons, (2) the child's wishes as expressed by the child or through the guardian ad litem, (3) the custodial history, (4) the need for a legally secure placement, and (5) whether any factors in (E)(7) to (11) apply. Pertinently, the factor represented by R.C. 2151.414(E)(10) is abandonment by the parent.

{¶ 18} Here, appellant first came into contact with CSB in 1991. Legal custody of her children was awarded to her mother in 1994 (and returned to her years later). She later gave temporary custody of all five of these children to CSB, which gave rise to this action. She admits that she has been a transient. She testified that she has lived at her mother's for the past week or two. Before that she had no home, but would get cleaned up at her grandfather's and sit on his porch through the night because, as she claims, she does not sleep or eat. Her drug of choice is cocaine. She acknowledges that she cannot provide for her children while she is using drugs. Yet she last used cocaine only two days before the final hearing; before that, she cannot say when the last time was because she is a regular user and as she puts it, "You do drugs. I mean, there ain't no issue on time or dates."

{¶ 19} Appellant did not get assessed for drug treatment until the day before the hearing in the fall of 2001, although her case plan, which existed since just after Terrell's birth in the summer of 2000, ordered that she refrain from using drugs, receive a drug assessment and follow the recommendations of the program, locate stable housing, and visit regularly. She completed none of these four requirements. As mentioned, she rarely visited her children—so rarely that she created a statutory presumption of abandonment.

{¶ 20} She was in jail for most of August 2001 for parking-ticket issues. Even if this were an excuse for that month and even if she had not canceled the September appointments, she still failed to complete a case plan that had existed for over one year. There is no evidence that she even tried to get assessed for her drug problem, any mental health problem, or her housing problem until the weeks before the final hearing. The complaint for permanent custody was filed in April 2001; a case plan had existed since June 2000; and she made no attempts until September 2001. In fact, she reasoned that she purposely did not try to find stable housing by contacting the housing authority because she felt there was no point to have housing when she was busy using drugs.

{¶ 21} Appellant was under the influence of illegal drugs when her youngest child, Terrell, was born. He was born addicted to cocaine, has been physically and developmentally unhealthy since his birth, and is in constant need of medical attention and physical therapy. For instance, he has had his stomach reconstructed. Appellant voluntarily gave temporary custody of him to CSB. Terrell does not know his mother. Appellant should note that under recent Supreme Court law, Terrell is per se abused, not just dependent as he has been adjudicated. *In re Baby Boy Blackshear* (2000), 90 Ohio St.3d 197, 199, 736 N.E.2d 462 (finding that a baby born with illegal drugs in its system due to the mother's drug abuse is per se abused). The court's decision that permanent

custody is in Terrell's best interests is not against the manifest weight of the evidence.

{¶ 22} Jewel and Harold are very close to each other and have been recommended for joint adoption. According to both the caseworker and the guardian ad litem, they do not appear to have bonded with their mother. The guardian ad litem had no concerns as to separating Jewel and Harold from the other children as long as Jewel and Harold are adopted together. The trial court's decision that permanent custody is in the best interests of Jewel and Harold is supported by the weight of the evidence.

{¶ 23} At the time of the hearing, Michelle had just turned 11, and Eryck was nine. According to the guardian ad litem, both children have a strong bond with their mother. The guardian opined that Michelle is not emotionally ready to sever the parental relationship. Michelle's behavior in her foster home significantly improved since Eryck was removed from that home.

{¶ 24} According to the guardian ad litem, Eryck is the child who is affected the most by the separation from his mother. According to the guardian ad litem, he cried and passionately pleaded against adoption and for his family to be reunited. Eryck was removed from the first foster home because of his use of profanity and attempt to hit the foster mother. At that time, he was taken by ambulance to the psychiatric ward and placed on antidepressants. Eryck's behavior is still problematic but is improving.

{¶ 25} The guardian ad litem recommended that the court deny the motion for permanent custody as to Michelle and Eryck until both children complete intensive counseling dealing with the issues surrounding this action, their mother, and their fathers. At trial, with regards to Michelle and Eryck, the guardian ad litem opined that it was in the children's best interests that appellant be given one last chance to get off drugs and find housing. The caseworker agreed that if appellant could stay off drugs and locate stable housing it would be in Michelle and Eryck's best interests to stay with their mom. However, she stated that in appellant's current situation, they could not be returned to her.

{¶ 26} The court found that these children are in need of a legally secure placement and that appellant is not committed to recovery based upon recent past practice. Appellant argues that she should have been given 90 days to complete the drug-treatment program for which she was assessed the day before the hearing. Because of the guardian ad litem's recommendation and the age of the children, the case as to these two children is not so clear-cut as it is for the other children.

{¶ 27} However, we do not substitute our judgment for that of the trier of fact. The fact-finder found that CSB presented clear and convincing evidence

that it was in Michelle and Eryck's best interests to have their permanent custody awarded to CSB. There is competent and credible evidence to support this determination. The fact-finder determined that these children desperately needed stability but that stability was not forthcoming and that completion of the drug program recommended by the recent assessment was unrealistic. Note that they were presumptively abandoned by their mother twice while in foster care because of her refusal to visit with them for over 90 days. For these reasons and the reasons set forth above as applying to all children, we do not find the decision to be against the weight of the evidence.

{¶ 28} Besides appellant's failure to object to the magistrate's decision and the lack of a defect on the face of the magistrate's decision, on reviewing the record, this court affirms the award of permanent custody to CSB as to all children. Thus, this assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶ 29} Appellant's second assignment of error argues:

{¶ 30} "The judgment of the trial court is void in that the court failed to acquire jurisdiction over all necessary parties."

{¶ 31} The Supreme Court has long held that an order of permanent custody is void for want of jurisdiction if a party was not properly served with notice of the complaint. *In re Frinzl* (1949), 152 Ohio St. 164, 172–173, 39 O.O. 456, 87 N.E.2d 583. Until at least constructive notice is given to the parents, the jurisdiction of the juvenile court does not attach, making any judgment of permanent custody void. *Lewis v. Reed* (1927), 117 Ohio St. 152, 157 N.E. 897. Based on these jurisdictional holdings, courts held that one parent has standing on appeal to challenge the permanent custody order as void for failing to serve the other parent. *In re Call* (Apr. 12, 2001), 8th Dist. No. 78376, 2001 WL 370526 (noting that because one of the factors requires a determination of whether the child can or should be placed with either parent, when an unserved parent is unable to defend against the allegations, the other properly served parent is inherently prejudiced).

{¶ 32} Juv.R. 16(A) is the first pertinent source for evaluating service by publication. This rule provides, "[W]hen the residence of a party is unknown and cannot be ascertained with reasonable diligence, service shall be made by publication. * * * [T]he court may not enter any order or judgment against any person who has not been served with process or served by publication unless that person appears." In order to accomplish this service by publication, an affidavit must be filed setting forth the last known address of the party and averring that service of summons cannot be made because the residence of the party is

unknown and cannot be ascertained with reasonable diligence. The service by publication can be made by newspaper, posting, and mail, or by a combination of these methods. If the newspaper method is used, it shall be a newspaper of general circulation in the county. The publication shall contain the name and address of the court, the case number, the name of the first party on each side, and the name and last known address, if any, of the person whose residence is unknown. The publication shall also contain a summary of the complaint and notify the party that he is to appear at the time and place stated; this time stated must be no less than seven days after the publication. "The publication shall be published once and service shall be complete on the date of publication." The publisher then must file an affidavit and a copy of the notice.

{¶ 33} Appellant makes two arguments under this assignment of error. First, she argues that the Daily Legal News is not the proper medium for legal notices and that the putative fathers should have been served by publication in The Youngstown Vindicator. Second, she argues that the putative fathers should have served by publication not just on the initial complaint for permanent custody and summons but also each time the hearing was rescheduled.

{¶ 34} A newspaper of general circulation in the county or city is defined in R.C. 7.12. For instance, it must be the type of publication "to which the general public resorts for passing events of a political, religious, commercial, and social nature, current happenings, announcements, miscellaneous reading matter, advertisements, and other notices." R.C. 7.12. The Supreme Court has previously opined in dicta that the Portage County Legal News is not a newspaper of general circulation because the general public does not resort to it to evaluate current events. *Record Pub. Co. v. Kainrad* (1990), 49 Ohio St.3d 296, 300–301, 551 N.E.2d 1286 (also noting that it is a weekly publication). This decision caused some confusion, which the court rectified in *State ex rel. Court Index Press, Inc. v. Deters* (1990), 56 Ohio St.3d 140, 565 N.E.2d 532. In that case, the court explained how official publishers of the court are granted special status exemption by R.C. 7.12, which cross-references R.C. 2701.09. Id. at 142, 565 N.E.2d 532.

{¶ 35} If a daily law journal is printed in a county, "the judges of the courts of record, other than the court of appeals, shall jointly designate such daily law journal as the journal in which shall be published all calendars of the courts of record in such county * * * together with * * * notices * * * and each notice required to be published by any of such judges." R.C. 2701.09. "Those newspapers which are designated as official publishers of court calendars, pursuant to R.C. 2701.09, are, by virtue of this designation, automatically qualified as newspapers of general circulation, without having to meet the tests contained in the second paragraph of R.C. 7.12." *Deters*, 56 Ohio St.3d at 142–143, 565 N.E.2d

532. Thus, the court held that the Cincinnati Court Index (which was published five times a week, circulated through Hamilton County, and designated as the official court publisher) was the proper place for serving legal notices.

{¶ 36} The Daily Legal News has similarly qualified as a newspaper of general circulation under the special exemption granted in R.C. 7.12 and R.C. 2701.09. See *In re Gallagher* (Mar. 17, 2002), 8th Dist. No. 80028, 2002 WL 366518 (evaluating the Daily Legal News that circulates in Cuyahoga County). The Daily Legal News relevant herein circulates in Mahoning County, it is published five times a week, and it is the statutorily described daily law journal in which court calendars are to be published. See the front page of the Daily Legal News (which specifically states that it is designated by the courts as the official law journal of Mahoning County and which is labeled Youngstown, Ohio); Loc.R. 1(A) (naming the Daily Legal News as the official notification system for Mahoning County attorneys); R.C. 7.12 (requiring it to be the official court calendar). Therefore, service by publication was not deficient merely because it was accomplished through the Daily Legal News. Accordingly, appellant's first argument fails.

{¶ 37} We shall now address appellant's second argument, that the court lacked jurisdiction because notice, although published on the permanent-custody complaint and first scheduled hearing, was not published before each rescheduled hearing. First, this argument would not affect the custody of Jewel because her putative father was personally served with notice of the first hearing, he appeared at that hearing, he was appointed counsel, and counsel was served with subsequent notices of hearings (most important, the final and actual hearing). In fact, Juv.R. 20(B), specifically requires notices that are required to be served after the complaint be served on the party's attorney unless otherwise ordered.

{¶ 38} As for the other three alleged fathers, they were all properly served with summons by publication on the permanent-custody complaint. See Juv.R. 10(D) (calling the permanent-custody motion a complaint); Juv.R. 16(A) (entitled "Summons: service, return"). Courts have noted the difference between service of the original summons and service of later notices, on the question of attachment of jurisdiction. See, e.g., *Lucas v. Green* (Oct. 21, 1999), 8th Dist. Nos. 74295, 74913, 74914, 1999 WL 961499 (distinguishing service of original process from service of papers after jurisdiction has attached). Here, the juvenile court established jurisdiction over each of the fathers by properly serving them each with notice of the complaint and summons. Any other issues do not affect jurisdiction. Therefore, this is as far as appellant's argument can extend because of issues of standing.

{¶ 39} We finally note that although these three putative fathers did not attend the first hearing, counsel were appointed for them. (Also note that these

putative fathers had been served by publication earlier on the temporary-custody motion but did not appear then either).  Thereafter, the court served notices on the respective attorneys as required by Juv.R. 20(A) and (B). The court-appointed attorneys for the putative fathers were present at the final hearing, and they explained their attempts to contact their clients.  The effectiveness of some of the fathers' attorneys in leaving the hearing is not jurisdictional or before this court. For all of the foregoing reasons, the court did not lack jurisdiction to proceed. Therefore, this assignment of error is overruled.

{¶ 40}  For the foregoing reasons, the order of permanent custody is affirmed.

Judgment affirmed.

GENE DONOFRIO and WAITE, JJ., concur.