OPINION
{¶ 1} Appellants, Jeffrey and Kim Hibbard, separately appeal a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of their biological daughters, April and Summer, to Butler County Children Services Board ("BCCSB").
 {¶ 2} In January 2000, April and Summer were removed from Kim's custody after both Kim and Jeffrey were arrested for domestic violence. At the time of their arrest, appellants were both drug addicts. The children were initially placed in the temporary custody of their paternal grandparents, Patricia and Jim Hibbard. However, because of her husband's heart problems, which eventually led to a bypass surgery, Patricia Hibbard asked that the children be removed from her custody. The children were then placed together in foster care and were adjudicated dependent and neglected. The children are doing very well in their foster family, have bonded with, and have a very good relationship with their foster family.
 {¶ 3} Following his arrest in January 2000, Jeffrey Hibbard became incarcerated and remained so during the proceedings below until he was released in April 2003. During that time, Jeffrey maintained sporadic contact with the children via letters and phone calls. When he was released in 2003, he had not seen his children since 1999. At the time of her arrest, Kim Hibbard was a crack addict and abusing alcohol. Kim first started drinking alcohol and smoking marijuana when she was 19 years old. In her early 30s, she started using cocaine. By the fall of 1999, she was using it almost daily. Following the removal of the children in January 2000, her drug abuse grew worse until she was put in jail in September 2000.
 {¶ 4} BCCSB implemented a case plan and worked with Kim in an attempt to return the children to her. The case plan requested, inter alia, that Kim participate in therapeutic counseling and complete a drug treatment which included a residential intensive drug treatment followed by a two-part outpatient drug treatment. Kim testified she was undergoing therapy but that she had not told her BCCSB caseworker. Although Kim had successfully completed the residential drug treatment in April 2001, she dropped out of the outpatient program preferring working on her recovery on her own terms and attending AA meetings. Believing she no longer needed those, Kim stopped attending AA meetings by the end of 2001. Although her urine tests have otherwise been negative, Kim admitted relapsing once in 2001 by drinking a 40-oz. bottle of beer. Kim never completed the entire drug treatment despite several referrals by BCCSB. Kim could offer little explanation for why she became a drug addict. On January 7, 2002, BCCSB moved for permanent custody.
 {¶ 5} In November 2002, a hearing on the motion revealed that Kim (1) did not attend all scheduled visits with her children, (2) did not always call the children on a regular basis after her visitation was suspended, (3) missed several court hearings, (4) needed $2500 to get her driver's license reinstated, (5) owed $3500 in fines which she was paying off by doing community services, and (6) suffers anxiety attacks quite often because of stress and worrying. At the time of the hearing, Kim had been working for three weeks for an independent contractor doing drywall, making $175-250 a week. Kim, by her own admission a recovering drug addict, was also living with Jim and Patricia Hibbard and their 31-year-old unemployed recovering drug addict and alcoholic son, Billy. Kim was confident she could have her own place by early 2003, and work full-time, care for the children, attend counseling, and do community service. There is no dispute that Kim loves her children.
 {¶ 6} With regard to Patricia and Jim Hibbard, the hearing revealed that although they wanted to have custody of the children, they had not filed a motion and had not seen the children for a year. Patricia had, however, talked to the children on occasions on the phone. The hearing also revealed that Patricia, age 59, suffers from arthritis which prevents her from walking distances, that she and her husband support themselves with SSI and food stamps, that Billy shows no indication of moving out until he gets a regular job, and that with the exception of one son, all of the children of Patricia and Jim ended up with substance abuse problems. A child and family therapist testified that stability was essential for the children's continued well-being and behavioral improvement. The children's Guardian Ad Litem recommended that permanent custody of the children be granted to BCCSB.
 {¶ 7} In January 2003, the magistrate issued a decision granting permanent custody of the children to BCCSB. The magistrate noted that the children had been in BCCSB's custody since May 2000. Noting the children's "obvious love for their mother" and Patricia's "great deal of affection" for the children, the magistrate nevertheless found that it was in the children's best interest for BCCSB to be granted permanent custody, and that the children could not be placed with Kim, Jeffrey, or any relative within a reasonable period of time. The trial court adopted the magistrate's decision on June 3, 2003. This appeal follows.
 {¶ 8} In their respective assignments of error, appellants both argue that the trial court's decision to grant BCCSB permanent custody was not supported by clear and convincing evidence.
 {¶ 9} A motion by the state for permanent custody seeks to end a natural parent's constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer (1982), 455 U.S. 745,759, 102 S.Ct. 1388. Therefore, in order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. 1388.
 {¶ 10} Before granting permanent custody of a child to a state agency, a trial court must find by clear and convincing evidence that an award of permanent custody is in the best interest of the child. R.C.2151.414(B). In making the best interest determination, the trial court is required to consider all relevant factors, including but not limited to the factors enumerated in R.C. 2151.414(D). The trial court must also find by clear and convincing evidence that (1) under the factors set forth in R.C. 2151.414(E), the child cannot be placed with one of its parents within a reasonable time or should not be placed with either parent, or (2) the child has been in the temporary custody of a public children services agency for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B).
 {¶ 11} An appellate court's review of a trial court's decision finding clear and convincing evidence is limited to whether sufficient credible evidence exists to support the trial court's determination. Inre Starkey, 150 Ohio App.3d 612, 617, 2002-Ohio-6892. A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In re Rodgers (2000), 138 Ohio App.3d 510, 520. Because the trial court is required to make specific statutory findings before granting permanent custody of a child to the state, the reviewing court must also determine whether the trial court followed the statutory factors in making its decision or abused its discretion by deviating from the factors. See In re William S., 75 Ohio St.3d 95, 1996-Ohio-182.
 {¶ 12} Upon thoroughly reviewing the record, coupled with the evidence recited earlier in this decision, we find that clear and convincing evidence supports the trial court's determination that it is in the best interest of the children to be permanently placed in the custody of BCCSB and that the children cannot be placed with either Kim or Jeffrey or any relative within a reasonable time. The trial court made findings related to each of the applicable statutory factors set forth in R.C. 2151.414(D) and (E) which are supported by the evidence. We therefore find the trial court did not err by granting permanent custody of April and Summer to BCCSB. Appellants' respective assignments of error are overruled.
 {¶ 13} Judgment affirmed.
Valen, P.J., and Walsh, J., concur.