OPINION
{¶ 1} Appellant, Kimberly R., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her two minor children, D.R and R.R., to the Butler County Children Services Board ("BCCSB"). We affirm the decision of the trial court.
 {¶ 2} Appellant and Robert R. are the biological parents of D.R. and R.R., and two other minor children who are in the custody of appellant's parents in Florida. On August 17, 2001, BCCSB filed a complaint alleging D.R. to be a dependent child and requesting that the court award appellant temporary custody after D.R.'s sibling suffered human bite marks and bruising on her face, arm, and leg. At that time, the trial court granted temporary custody of D.R. to appellant, and ordered that Robert have no contact with D.R. pending an investigation and hearing.
 {¶ 3} On October 1, 2001, appellant permitted Robert to watch D.R. while she was at work, and Robert forcefully broke the child's arm. BCCSB subsequently removed D.R. from appellant's care and filed a complaint seeking temporary custody of the child, and alleging him to be abused, neglected, and dependent. On October 2, 2001, the trial court granted temporary custody of D.R. to BCCSB. The court implemented a case plan which required that appellant and Robert undergo psychological evaluations. On May 17, 2004, the trial court adjudicated D.R. an abused, neglected and dependent child.
 {¶ 4} In April 2002, appellant completed a psychological evaluation, and the suggested diagnoses included a "mood disorder not otherwise specified" and possible alcohol abuse. The psychologist recommended that appellant undergo a psychiatric consultation and substance abuse assessment, and that she also complete outpatient treatment and participate in an observed visit with the children. Appellant completed a substance abuse assessment, substance abuse education classes, a Development of Living Skills program, and also participated in a psychiatric evaluation. The psychiatrist diagnosed appellant as having characherological depression, and recommended treatment that included antidepressant medication and counseling.
 {¶ 5} On May 24, 2002, while D.R. was in the temporary custody of BCCSB, appellant gave birth to R.R. On that date, BCCSB filed a complaint seeking temporary custody of R.R., and alleging R.R. to be dependent. The trial court granted temporary custody of R.R. to BCCSB, and adjudicated her a dependant child.
 {¶ 6} Although Robert was making progress with the case plan, he discontinued his participation in case plan services in March 2003, and has not contacted BCCSB since that time. Despite appellant's refusal to take prescribed antidepressant medication and undergo counseling, she otherwise made progress with the case plan, and the children were returned to her care in April 2003. BCCSB amended the case plan, which required appellant to complete the recommended psychiatric treatment, and to maintain stable housing and income. However, in June 2003, appellant returned the children to BCCSB, and explained that she was unable to care for the children and that she was afraid that she might harm them. BCCSB resumed temporary custody of D.R. and R.R. and scheduled weekly appointments for appellant to visit with the children.
 {¶ 7} On September 16, 2003, after appellant failed to visit the children for over six weeks, BCCSB filed a motion seeking permanent custody of D.R. and R.R. BCCSB maintained that no further treatment plan could be formulated for appellant or Robert, and that neither parent could provide adequate parental care for the children. After holding several hearings, the trial court issued a decision on July 2, 2004 granting permanent custody of D.R. and R.R. to BCCSB. The trial court found that clear and convincing evidence supports the findings that it is in the best interest of D.R. and R.R. that they be placed in the permanent custody of BCCSB, that the children had been in the temporary custody of BCCSB for more than 12 months, and that neither child could or should be placed with their parents. Appellant appeals the trial court's decision, raising a single assignment of error.
 {¶ 8} Appellant's Assignment of Error:
 {¶ 9} "The trial court's decision placing custody with the bccsb is not supported by clear and convincing evidence."
 {¶ 10} Appellant argues that the trial court erred in granting BCCSB's motion for permanent custody. Appellant maintains that the evidence presented at trial demonstrates that the best interests of the children are best served by returning them to her custody.
 {¶ 11} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santosky v. Kramer (1982), 455 U.S. 745,759, 102 S.Ct. 1388. An appellate court's review of a trial court's decision finding clear and convincing evidence is limited to whether sufficient credible evidence exists to support the trial court's determination. In re Starkey,150 Ohio App.3d 612, 617, 2002-Ohio-6892. A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In re Rodgers (2000), 138 Ohio App.3d 510, 520.
 {¶ 12} When a state agency seeks permanent custody of a dependent child, the trial court is required to determine, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency. R.C. 2151.414(B)(1). In making such a determination, the trial court must consider all relevant factors, including but not limited to the following factors enumerated in R.C. 2151.414(D):
 {¶ 13} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 14} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 15} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 16} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 17} "(5) Whether any of the factors in [R.C.2151.414(E)-(7) to (11)] apply in relation to the parents and child."
 {¶ 18} After thoroughly reviewing the record, we find that clear and convincing evidence supports the trial court's determination that it is in the best interest of D.R. and R.R. that they be permanently placed in the custody of BCCSB. The trial court made findings related to the applicable statutory factors set forth in R.C. 2151.414(D). Viewing the facts of this case in light of these factors, it is clear that the children's needs are best served by granting permanent custody to BCCSB.
 {¶ 19} In its decision, the court found that as of the date of the hearing D.R. had been in the temporary custody of BCCSB for a total of 29 months, and that R.R. had been in the temporary custody of BCCSB for a total of 22 months. The court noted that appellant has attended visitations with her children and that some degree of a bond exists between them. Also, the court found that there appears to be no bond of any kind with their father, as he has ceased visiting the children. Further, the court found that D.R. and R.R. are quite bonded with each other, and with their foster parents.
 {¶ 20} Also, the court found that, due to the age and maturity of the children, they are unable to communicate their wishes as to their custody. However, the court found that the children's guardian ad litem has recommended that they be permanently placed in the custody of BCCSB.
 {¶ 21} In addition, the court found that both children had been in the temporary custody of BCCSB for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999. The record indicates that except for a brief two-month period, D.R. has been in the temporary custody of BCCSB since October 1, 2001, and that R.R. has been in the temporary custody of BCCSB since the date of her birth on May 24, 2002.
 {¶ 22} The court also considered the children's need for a legally secure permanent placement, and whether such a placement could be achieved without a grant of permanent custody to BCCSB. The court found that the children are in need of a legally secure permanent placement because of the length of time they have been in foster care. The court found that as of the date of the hearing, D.R. had been in foster care for 29 months of his 37-month lifetime, and that R.R. had been in foster care for 22 months of her 24-month lifetime.
 {¶ 23} Further, the court found that both parents have failed to complete significant portions of the case plan services offered by BCCSB. According to the record, Robert has failed to complete his case plan, and has not contacted BCCSB since March 2003. Also, the record indicates that appellant has refused treatment for her characherological depression, and has failed to maintain stable housing and employment during the period of BCCSB's involvement in this matter. Appellant also has failed to consistently attend visitations with the children. According to the record, appellant attended only 16 of 44 possible visitations.
 {¶ 24} After considering this evidence, the court found that granting permanent custody to BCCSB is in the best interest of D.R. and R.R. We find that sufficient credible evidence supports the trial court's findings with respect to the best interest determination.
 {¶ 25} Once a trial court does find by clear and convincing evidence that it is in the best interest of the children to grant permanent custody to the agency, R.C. 2151.414(B)(1) provides that the court may grant permanent custody to an agency if it determines that the children have been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999. As stated above, the evidence indicates that as of the date of the hearing, both children had been in the temporary custody of BCCSB for more than 12 of the preceding 22 months.
 {¶ 26} Also, according to R.C. 2151.414(E), after a court determines that it is in the best interest of the child to grant permanent custody to the agency, a court must grant permanent custody if the court determines by clear and convincing evidence that the children cannot or should not be placed with their parents.
 {¶ 27} According to R.C. 2151.414(E)(1), a child cannot or should not be placed with his parent if:
 {¶ 28} "the parent has failed continuously and repeatedly to substantially remedy the conditions causing the [children] to be placed outside the [children's] home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 29} In its decision, the trial court found that the cause of the initial removal in this case was because appellant and Robert were unable to provide a safe environment for their children. Robert has undergone a psychological evaluation and drug and alcohol assessments. However, he has not completed case plan services and has not contacted BCCSB since March 2003.
 {¶ 30} Although appellant has completed some case plan services, she has failed to fulfill her obligations under the case plan. Appellant participated in psychological and psychiatric evaluations and drug and alcohol assessments, and has completed substance abuse education and Development of Living Skills classes. However, appellant has refused the recommended treatment for her characherological depression. The record indicates that after BCCSB returned D.R. and R.R. to appellant's care in April 2003, appellant returned the children to the agency only two months later because she was having suicidal thoughts and was afraid that she might harm the children. Further, the evidence indicates that appellant has failed to demonstrate an ability to maintain stable employment and housing. Appellant claims that she will do whatever it takes to regain custody of her children, yet she has been unwilling to take the necessary steps to maintain a safe home for them.
 {¶ 31} The court found that BCCSB made reasonable efforts to prevent the need for removing the children from their parent's care. Since August 2001, BCCSB has provided appellant and Robert with numerous services, including financial assistance and psychological and psychiatric evaluations. Appellant and Robert have failed to utilize these services to provide a safe environment for D.R. and R.R., which was the cause for their initial removal. Further, appellant and Robert have failed to consistently take advantage of scheduled visitations, despite BCCSB's efforts to provide them such opportunities.
 {¶ 32} Upon a thorough review of the evidence, we find that clear and convincing evidence supports the trial court's determination that it is in the best interest of D.R. and R.R. to be permanently placed in the custody of BCCSB, that both children were in the temporary custody of BCCSB for more than twelve months prior to the hearing, and that neither child can or should be placed with either appellant or Robert. The trial court made findings related to the applicable statutory factors set forth in R.C. 2151.414(D) and (E), which are supported by the evidence. The trial court did not err by granting permanent custody of the children to BCCSB. Appellant's assignment of error is overruled.
 {¶ 33} Judgment affirmed.
Powell, P.J., and Hendrickson, J., concur.
Hendrickson, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section6(C), Article IV of the Ohio Constitution.