OPINION
{¶ 1} Defendants-appellants, Corbin H. and Emily H., appeal a decision of the Preble County Court of Common Pleas, Juvenile Division, granting permanent custody of their four children to the Children Services Division of the Preble County Job and Family Services ("the agency"). *Page 2 
 {¶ 2} Appellants are the parents of four children involved in this appeal. The agency first became involved with appellants in 2002 when the couple had two children. At that time, the agency received a referral regarding abuse of appellants' oldest child, J.H. The complaint was not proven, but the agency had concerns and provided parenting classes and support for the parents.
 {¶ 3} In September 2002, the agency filed a complaint regarding abuse of the couple's second child, S.H., who was five months old at the time. The child was taken to the hospital because she was unresponsive. She had bruising on her back and her left eye. Testing revealed collections of blood around the brain. Some were older and some were recent. Hemorrhages in the back of the child's eyes were severe and extensive.
 {¶ 4} Dr. Ralph Hicks, who treated S.H. at Children's Hospital in Dayton concluded that the child suffered from nonaccidental head trauma. He determined that the damage was caused by either blunt trauma to the head and/or shaken baby syndrome. He stated that either one or a combination of both caused the damage to the child. S.H. underwent surgery to drain the blood around her brain.
 {¶ 5} J.H. was removed from the home and placed in foster care and then with her maternal grandparents. When S.H. was released from the hospital, she was placed in a foster home for medically fragile children. Emily was indicted on one count of second-degree felony child endangering. As part of a plea agreement, she pled guilty to a first-degree misdemeanor charge of child endangering. She received a six-month jail term, which was suspended, and she was placed on two years probation.
 {¶ 6} A case plan was prepared by the agency that included parenting classes, psychological evaluations, and anger management for Corbin. While the two children were in foster care, appellants had C.H., their third child. The case plan was completed and J.H. was returned to appellants' home in October 2003, and S.H. was returned in January 2004. *Page 3 
 {¶ 7} Less than four months after her return home, appellants again took S.H. to the hospital. Upon arrival at Wayne Hospital in Greenville, appellants told medical personnel that S.H. had choked on a peanut butter sandwich and was at times unresponsive. Dr. Robert Girman examined the child and discovered bruising around her head, face, torso and extremities. He also observed bite marks on her thighs. The child was at times not breathing and having "seizure activity, absence type," which are episodes where she stared off and was nonresponsive. When questioned, the parents told the physician that the child banged her head against the wall and floor and would bite herself. Dr. Girman called Children's Hospital in Dayton and S.H. was care flighted there for care.
 {¶ 8} Dr. Hicks again treated S.H. for her injuries. He observed that her head was too large for her age, she had thinning hair on her scalp, and was lethargic, listless and difficult to arouse. He observed bruising on the child's face, scalp, forehead, front and sides of neck, trunk and extremities. An examination and testing revealed swelling of the optic nerve in the back of the child's eyes and a few small hemorrhages or areas of bleeding in the back of the eyes. A CTC scan and MRI scan of the head revealed collections of blood that were consistent with injuries approximately two to three weeks prior. X-rays and a bone scan revealed four fractures. Two healing fractures were discovered in the left forearm, and one healing fracture in the tibia bone in the leg. A more recent fracture was identified in the other arm. The child also had a chip on one of her front teeth. A forensic dental consultant linked Emily's dentition to the bite marks on the child.
 {¶ 9} Dr. Hicks found the injuries inconsistent with the history received from the parents. He diagnosed battered child syndrome and explained that the bruises of various colors indicated the injuries were different ages. He stated that the 2004 injuries were more significant than the previous injuries in extent and number of injuries. Dr. Hicks, who has experience in the area of child abuse prevention, explained that the siblings needed to be *Page 4 
considered at risk for abuse as well, because studies and his own personal experience showed where one child is abused, the others are at risk. Emily and Corbin were each indicted on one count of second-degree felony child endangering. As part of a plea agreement, Emily pled guilty to the charge and on May 6, 2005 was sentenced to two years in prison and the charges against Corbin were dismissed.
 {¶ 10} J.H. and S.H. were again removed from the home, along with C.H., the youngest child, and the agency filed a motion seeking permanent custody of all three children. The trial court granted permanent custody to the agency but the decision was reversed on procedural grounds by this court. In re J.H., Preble App. Nos. CA2005-11-019, CA2005-11-020, 2006-Ohio-3237.
 {¶ 11} On remand of the case, the agency filed new complaints for permanent custody of the three children. The agency also filed a complaint for permanent custody of M.H. who was born while Emily was in prison. The trial court adjudicated S.H. an abused and dependent child and adjudicated the other three children as dependent children. The court then granted the agency's motion for permanent custody of all four children.
 {¶ 12} Emily and Corbin now separately appeal the trial court's decision to grant permanent custody of the children to the agency. Corbin raises two assignments of error, and Emily raises a single assignment of error for our review.
 {¶ 13} In Emily's sole assignment of error and Corbin's second assignment of error, both appellants argue that the trial court's decision is not supported by clear and convincing evidence.
 {¶ 14} Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santosky v.Kramer (1982), 455 U.S. 745, 759, 102 S.Ct. 1388. An appellate court's review *Page 5 
of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. In re Starkey, 150 Ohio App.3d 612,2002-Ohio-6892, ¶ 16. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In re Rodgers
(2000), 138 Ohio App.3d 510, 520.
 {¶ 15} R.C. 2151.414(B) requires the juvenile court to apply a two-part test when terminating parental rights and awarding permanent custody to a children services agency. Specifically, the court must find that: 1) the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C.2151.414(D); and, 2) any of the following apply: the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; the child is abandoned; the child is orphaned; or the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period. R.C.2151.414(B)(1)(a), (b), (c) and (d); In re Schaefer, 111 Ohio St.3d 498,2006-Ohio-5513, ¶ 31-36; In re Ebenschweiger, Butler App. No. CA2003-04-080, 2003-Ohio-5990, ¶ 9.
 {¶ 16} With respect to the first part of the test, R.C. 2151.414(D) provides that in considering the best interest of a child in a permanent custody hearing, "the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 17} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 18} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 19} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child *Page 6 
placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 20} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 21} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 22} R.C. 2151.414(E) provides a inexhaustive list of factors for a court to consider in determining whether a child cannot or should not be placed with either parent. The statute provides that if a court determines that any of the factors apply, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.
 {¶ 23} The parties do not dispute the trial court's finding that the children had been in the custody of the agency for 12 of 22 months.[1]
Instead, they argue that the evidence does not clearly and convincingly support the court's best interest determination.
 {¶ 24} Emily argues that the court erred by ignoring the fact that none of the factors set forth in R.C. 2151.414(E) applied in this case. Corbin argues that while the evidence was "overwhelmingly negative" against Emily, there is no evidence that the children were abused by any affirmative act by him and that he should have been given the opportunity to work through a case plan for reunification. We find no merit to either argument.
 {¶ 25} After reviewing the record, we find that the trial court's grant of permanent *Page 7 
custody was supported by clear and convincing evidence. The trial court conscientiously went through each of the above best interest factors and the factors relative to whether the children can or should be placed with either parent. The court found that the children had been in the custody of the agency for more than 12 of 22 months and that the guardian ad litem vigorously advocated for permanent custody. The court also determined that none of the children should be placed with the parents, as the mother seriously injured S.H. two times, once after receiving counseling and guidance, and now admits only to shaking the child three times. The court found this admission not truthful, as the injuries were much too extensive to be the result of only three shakings. The court also found that Emily denies causing the 2004 injuries and that J.H. was the subject of an abuse complaint before both sets of injuries to S.H. and that she failed to remedy the situation.
 {¶ 26} The court further found that Corbin failed to accept his wife's culpability and failed to protect the children. The court found that the agency made reasonable efforts to reunify the children with their parents following the 2002 removal and that the successful completion of case plan services did not prevent the injuries to S.H. in 2004, and that given this history, reasonable efforts were not required with regard to M.H., the youngest child. The court concluded that the children needed a legally secure placement that could not be achieved without a grant of permanent custody.
 {¶ 27} Emily's arguments on appeal involve specific determinations by the court. She argues the evidence does not show the agency did anything to help them remedy the problems that led to the removal of the children, that the trial court ignored the fact that she was incarcerated and her parental rights were improperly terminated in determining she exhibited a lack of commitment to the children. She also argues that the court ignored the fact that she was no longer incarcerated at the time of the decision.
 {¶ 28} We find no merit to any of these arguments. The evidence shows that the *Page 8 
agency provided case plan services to appellants after the referral involving J.H. and provided comprehensive services to appellants after S.H. and J.H. were removed in 2002. In addition, Emily was incarcerated at the time of the hearing, and the court properly considered this factor under R.C. 2151.414(E). The fact that she was released from prison by the time of the court's decision does not alter the fact that she was incarcerated for an offense against her child. The evidence shows an unwillingness to admit to causing serious injuries to S.H. or accept that the injuries were serious. Emily testified that the photographs of the injuries to S.H. were made to look worse than they were and that Dr. Hicks is a liar.
 {¶ 29} Finally, Emily argues that the court attempted to turn her conviction into one that is applicable under R.C. 2151.414(E)(7)(c). This section addresses a parent's conviction under R.C. 2929.22(B)(2) for endangering children with torture or cruel abuse. Appellant was convicted under subsection (B)(1) of the statute which involves abuse to the child. The court recognized that appellant was not convicted under the applicable (B)(2) subsection, but stated that the broken bones and bites involved in this case "certainly come close to the `torture' or cruelly abused" statute. We find no error in the trial court's consideration of this fact. The list of factors under R.C. 2151.414(E) are inexhaustive, as the statute requires the court to consider "any other factor the court considers relevant." R.C. 2151.414(E)(16). The court could properly consider the fact that although appellant was not convicted under this section, the abuse she inflicted on her child was similar to torture.
 {¶ 30} Corbin argues in this assignment of error that there is no evidence the children were abused by any affirmative act by him. However, the statute specifically addresses a parent's unwillingness to protect his child as one of the factors for the court to consider under R.C. 2151.414(E)(14). This section states that the court should consider the fact that a parent "for any reason is unwilling to * * * prevent the child from suffering physical, emotional or sexual abuse or physical, emotional, or mental neglect." *Page 9 
 {¶ 31} It is clear that Corbin has not been able or willing to protect the children from abuse by his wife. Moreover, there is no indication that he will be able to protect the children in the future. He testified that he intends to stay married to Emily and the evidence indicates an unwillingness to place the safety of the children as his first priority as he evidences a lack of acceptance that his wife caused serious physical harm to one of their children on two separate occasions.
 {¶ 32} After reviewing the record, we find no merit to appellants' arguments that the trial court's decision to grant permanent custody is not supported by clear and convincing evidence. Therefore, Emily's sole assignment of error and Corbin's second assignment of error are overruled.
 {¶ 33} In his first assignment of error, Corbin contends that the trial court erred in not considering a planned permanent living arrangement (PPLA) for the children. A PPLA is a placement that gives legal custody to an agency without terminating parental rights and allows the agency to make an appropriate placement, including foster care or other placement. R.C. 2151.011(A)(36).
 {¶ 34} The Ohio Supreme Court has determined that a court does not have authority to order a PPLA unless a children services agency has requested this disposition. In re A.B., 110 Ohio St.3d 230,2006-Ohio-4359, ¶ 37. The agency in this case did not request a PPLA, and so the trial court was without authority to consider this disposition. Therefore, we find no merit to Corbin's argument and his first assignment of error is overruled.
 {¶ 35} Judgment affirmed.
WALSH and POWELL, JJ., concur.
[1] We note that while the court made the "12 of 22" finding regarding all four children, this finding only correctly applies to J.H., S.H. and C.H. With regard to M.H., she was placed in the agency's custody shortly after her birth on August 12, 2005. The agency's motion for permanent custody was filed on July 7, 2006. The Ohio Supreme Court has held that "* * * before a public children-services agency * * * can move for permanent custody of a child on R.C. 2151.414(B)(1)(d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period. In other words, the time that passes between the filing of a motion for permanent custody and the permanent custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." In re C.W., 104 Ohio St.3d 163,2004-Ohio-6411, ¶ 26. However, the court also made the finding that each of the children cannot or should not be placed with either parent within a reasonable time. *Page 1