[Cite as *In re L.W.*, 2013-Ohio-43.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


IN THE MATTER OF:                                    :

      L.W., et al.                                 :                    CASE NO.  CA2012-07-057

                                      :                    O P I N I O N
                                                             1/11/2013

                                        :

                                        :


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2009 JC 04092


Amanda List, 2400 Clermont Center Drive, Suite 204A, Batavia, Ohio 45103, Guardian Ad Litem

Brafford & Phillips, Suellen M. Brafford, 285 East Main Street, Batavia, Ohio 45103, for appellant

D. Vincent Faris, Clermont County Prosecuting Attorney, David H. Hoffmann, 123 North Third Street, Batavia, Ohio 45103, for appellee


**S. POWELL, J.**

{¶ 1}  Appellant, the biological mother of L.W., K.W. and C.W., appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of the children to a children services agency.

{¶ 2} On December 7, 2009, the Clermont County Department of Job and Family Services filed a complaint alleging appellant's five children were dependent. The complaint alleged that in November, the agency received a report concerning the children's sleeping arrangement and the mother informed the agency that she was attempting to find availability for the family at a homeless shelter. Additional visits to the home were made, but the caseworker was unable to locate the family.

{¶ 3} The complaint further alleged that on December 4, 2009, the agency received information that there was an incident at a homeless shelter involving the family. Appellant testified at the permanent custody hearing that the father attempted to have sex with her while she was sleeping and the children were in the room. She said this traumatized her because of previous sexual abuse she had experienced as a child. Appellant was sent to a facility for mental health concerns and the children were placed in foster care. The complaint alleged that the children were dependent based on concern for appellant's mental stability, along with her failure to protect the children and to provide stable housing.

{¶ 4} The children were adjudicated dependent on January 28, 2010, and temporary custody was granted to the agency. During the pendency of the case, other custody arrangements were made for the two oldest children, who have different fathers than the three children involved in this appeal. Appellant's three youngest children, L.W., K.W. and C.W., remained in foster care. A case plan was prepared that required appellant to maintain stable housing, to visit regularly with the children, to attend counseling and to address mental health concerns.

{¶ 5} Appellant moved several times and made little progress on the case plan. The agency filed a motion for permanent custody of the children on November 17, 2011. The father surrendered his parental rights prior to the hearing on the motion. At the permanent custody hearing, the agency caseworker testified that appellant did not successfully complete

any elements of the case plan.

{¶ 6} Regarding housing, the caseworker testified that appellant went from the homeless shelter to a home on Bauer Road in Clermont County, where she lived for four months. After a short stay at a Motel 6, appellant lived in a homeless shelter in Highland County for a few months, followed by around two months in a home her pastor found for her.

{¶ 7} According to the caseworker, appellant next lived at a homeless shelter in Indiana for several months, followed by Motel 6 for about a month. Appellant then moved into a home in Peebles, Ohio, with her boyfriend's aunt and uncle. Next she lived with a lady in her church for a week, then at a home in Peebles for three months, then an apartment in Hillsboro for a month, followed by a hotel stay. Appellant then moved to Florida. The caseworker testified that appellant informed her that church members in Florida helped her get an apartment, but appellant would not give the caseworker the address, and would only supply a post office box number.

{¶ 8} Appellant initially had mental health treatment immediately following the incident at the shelter, but failed to attend counseling. She told the caseworker she was having counseling at her church in Peebles but no documentation was provided to the agency. After moving to Florida, appellant went to counseling five times with Cathy Finnegan and initially provided a release so that the agency could follow her treatment. However, the caseworker stated that appellant revoked the release when Finnegan told the agency things appellant did not like. According to the caseworker, Finnegan recommended appellant seek mental health treatment from a licensed agency in order to meet with a psychiatrist, to have an assessment for medication and to have psychotherapy on an ongoing basis. The caseworker testified that appellant was resistant to the idea of mental health treatment and views mental health treatment in a negative way, rather than something that can help her.

{¶ 9} The caseworker testified that appellant was unable to maintain steady

employment due to her frequent moves. Appellant worked at day labor jobs and also worked for a short period of time at a gas station. The caseworker stated that appellant reported that she had employment in Florida, but did not disclose what the job was and failed to provide any pay stubs verifying employment. Appellant testified at the hearing that she is working at a gas station in Florida.

{¶ 10} The magistrate issued a decision on March 2, 2012 granting permanent custody of the three children to the agency. Objections to the magistrate's decision were overruled on April 4, 2012.

{¶ 11} Appellant now appeals the juvenile court's decision to grant permanent custody of the children to the agency. She raises a single assignment of error for our review:

{¶ 12} THE TRIAL COURT ERRED WHEN IT FOUND, BY CLEAR AND CONVINCING EVIDENCE, THAT GRANTING PERMANENT CUSTODY OF THE CHILDREN TO THE CLERMONT COUNTY DEPARTMENT OF JOB & FAMILY SERVICES WAS IN THE BEST INTEREST OF THE CHILDREN.

{¶ 13} Within this assignment of error, appellant first argues that it was an abuse of discretion for the court to find that the agency made reasonable efforts to reunify the children with her. She contends that her only problem was financial and the agency did not provide enough assistance to help her complete the elements of her case plan.

{¶ 14} Except for a few narrowly defined statutory exceptions, R.C. 2151.419 requires a children's service agency to make reasonable efforts to reunify a family prior to the termination of parental rights. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 21. While the court is not required to make a reasonable efforts determination at a hearing on a motion for permanent custody, this finding must have been made at other stages of the child-custody proceeding. *See Id.* at ¶ 42. In this case, the trial court made reasonable efforts findings at hearings both prior to the hearing on the permanent custody motion and in its decision

- 4 -

granting permanent custody.

{¶ 15} In determining whether the agency made reasonable efforts to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. *In re K.M.*, 12th Dist. No. CA2004-02-052, 2004-Ohio-4152, ¶ 23. "Reasonable efforts" does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible. *Id.*

{¶ 16} Appellant argues that the agency should have done more to help her financially and she would have been able to be reunited with her children. She testified at the hearing that she asked the agency for financial help with housing, but there were no funds available.

{¶ 17} However, the caseworker testified that appellant's frequent moves made it hard for her to obtain services from programs because each time appellant moved, she had to reapply for aid. The caseworker testified that she had many discussions with appellant regarding the steps appellant needed to take to be reunited with her children and had numerous conversations about how moving frequently hindered progress. Based on the facts of this case, we find that the trial court did not err in determining that the agency made reasonable efforts to reunite appellant with her children.

{¶ 18} Appellant next argues that there was not clear and convincing evidence to support the trial court's decision and that the court abused its discretion in granting permanent custody to the agency.

{¶ 19} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient

credible evidence exists to support the juvenile court's determination. *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.). A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers* (2000), 138 Ohio App.3d 510, 520 (12th Dist.).

{¶ 20} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.*, 12th Dist. Nos. CA2009-10-139, CA2009-11-146, 2010-Ohio-1122, ¶ 22.

{¶ 21} The juvenile court found by clear and convincing evidence, and appellant does not dispute, that the children have been in the temporary custody of Clermont County Department of Job and Family Services for more than 12 months of a consecutive 22-month period as of the date the agency filed the permanent custody motion. However, as mentioned above, appellant does dispute the juvenile court's finding that granting permanent custody of the children to the agency is in the children's best interest.

{¶ 22} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> the court shall consider all relevant factors, including, but not
> limited to the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *,

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 23} The trial court found that appellant stated that visits went great with the children and appellant feels bonded to L.W., but indicated she never got a chance to bond with the two younger children, C.W. and K.W., because they were so young when the case began. The court found that despite this, the mother moved to Florida. The trial court further found that the guardian ad litem indicated the children were bonded to the foster parents.

{¶ 24} The court determined that the children have been in foster care since the initiation of the case in December 2009 and have been in agency custody for 12 of 22 months. The trial court found that the guardian was unable to determine the children's wishes for placement because of their age and speech delays, and an inability to keep them focused on task. The guardian ad litem recommended granting permanent custody to the agency.

{¶ 25} The court further found that the children are in need of a legally secure placement. The court found that L.W. has some special needs that are being addressed through therapy and education and also found that the foster parents enjoy the children and

would like to adopt them. The court found the father surrendered his parental rights and appellant has been unable to achieve a consistent level of stability necessary to resume custody since the children were removed at a young age in December 2009. The court found that appellant's move to Florida "significantly complicates further efforts toward timely reunification" and the children need permanence. The court concluded that the type of legally secure placement the children need cannot be achieved without a grant of permanent custody to the agency.

{¶ 26} Appellant's arguments regarding the court's best interest finding revolve around facts the caseworker was unaware of, because another caseworker was initially involved in the case. Appellant also argues that the guardian ad litem did not testify, so it is unclear what the children's desire for placement was and she argues that the guardian could have done more in the case.

{¶ 27} Although the caseworker was not familiar with every specific fact in the case, her testimony was sufficient to show appellant failed to complete any case plan requirements and that appellant was unable to provide the stability the children need. Appellant's arguments regarding the guardian's involvement are general and do not indicate appellant was prejudiced by any failure on the part of the guardian. The guardian ad litem submitted a report and appellant did not request to cross-examine her. The guardian prepared a report that stated she was unable to determine the children's desire for placement due to their ages. The court reviewed this report and found in its decision that the guardian was unable to determine the wishes of the children, but that the guardian recommended permanent custody.

{¶ 28} After a careful review, we find the court's decision that permanent custody was in the best interest of the children was supported by the evidence. Appellant failed to make any progress on the case plan and failed to see how her inability to provide a stable home for

her children was prohibiting reunification.  Instead, appellant moved to Florida.  Appellant's assignment of error is overruled.

{¶ 29} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.