OPINION
{¶ 1} Appellant, Keith McLean ("McLean"), appeals the January 13, 2005 judgment entry of the Trumbull County Court of Common Pleas, Juvenile Division, terminating his parental rights and granting permanent custody of his minor children, Ford McLean, Keith McLean, James McLean, and Harrison McLean, to appellee, Trumbull County Children Services Board ("Trumbull Children Services"). For the following reasons, we affirm the decision of the court below.
 {¶ 2} Ford McLean (d.o.b. January 6, 1997), Keith McLean (d.o.b. January 11, 1998), James McLean (d.o.b. September 21, 1999), and Harrison McLean (d.o.b. August 26, 2000) are the natural children of Keith and Denise McLean.[1] The children have been diagnosed with various developmental delays and/or disabilities: Ford has mild mental retardation; Keith has delays in language; James has attention deficit and hyperactivity disorder (AD/HD) as well as developmental delays and mild autism; and Harrison has experienced severe developmental delays.
 {¶ 3} The record indicated the McLeans owned property and/or had resident addresses in Mahoning County, Ohio, Trumbull County, Ohio, and Armstrong County, Pennsylvania. On September 28, 2001, Trumbull Children Services became involved with the children due to allegations of poor home conditions, poor hygiene, domestic violence between the parents, missed medical appointments, and lack of stable housing. During the early stages of the agency's involvement, the McLeans were residing in Trumbull County. Trumbull Children Services opened a case file with Social Services and began providing various services for the family. The services continued through December of 2001; however, in early 2002, Trumbull Children Services found it increasingly more difficult to locate the McLeans.
 {¶ 4} After receiving information that the McLeans had relocated to Armstrong County, Pennsylvania, Trumbull Children Services contacted the Armstrong County Children, Youth and Family Services ("Armstrong Children Services") in Pennsylvania. On February 15, 2002, Armstrong Children Services filed a "Juvenile Dependency Petition" regarding the four boys. However, Armstrong Children Services withdrew its petition on May 15, 2002, owing to the agency's inability to locate the family in Armstrong County.
 {¶ 5} On May 28, 2002, McLean went with his four children to meet with his probation officer at the Newton Falls Municipal Court. Due to the children's unclean appearance and offensive odor, Newton Falls law enforcement officials contacted Trumbull Children Services. According to Trumbull Children Services, the children were filthy: their clothing was badly soiled and possessed a strong odor of urine and feces. Trumbull Children Services additionally noted McLean had no child car seats in the vehicle he used to transport the children. Pursuant to Juv.R. 6, the Newton Falls Police Department placed the children into the emergency care and custody of Trumbull Children Services.
 {¶ 6} On May 29, 2002, Trumbull Children Services filed its complaint for dependency. The children were placed in the temporary custody of the agency through emergency ex parte orders. The orders were continued at the May 30, 2002 Shelter Care Hearing. The court appointed Attorney Michael Georgiadis as both counsel and guardian ad litem for the children. On June 27, 2002, an adjudicatory hearing was held where the parties, through their counsel, stipulated to a finding of dependency and that the issues of immediate concern for the children were (1) the hygiene of the children; (2) their medical and developmental problems; (3) housing and stability of housing; and (4) the domestic violence in the jurisdiction of Newton Falls Municipal Court.
 {¶ 7} Accordingly, the magistrate determined that all of the children were dependent and on July 10, 2002, the trial court adopted the magistrate's findings and adjudicated the children dependent.
 {¶ 8} The McLeans were provided with case plans for reunification with the children. During the Summer and Fall of 2002, McLean and Denise separated. McLean and Denise had a hostile association through their separation highlighted by a series of reciprocal criminal complaints filed against each other. McLean filed for divorce in December of 2002, while the children remained in foster care.
 {¶ 9} The court conducted an early review of the case on December 19, 2002. At the hearing, McLean informed the court that he and Denise had separated and that he had filed for divorce. The court ordered the parents to pay child support for the children in the amount of $200 each per month ($50 per child, per parent, per month) to apply retroactively from August 1, 2002.
 {¶ 10} On March 14, 2003, Trumbull Children Services filed a motion requesting a six month extension of its temporary custody. The motion was heard and granted on May 14, 2003. In June 2003, the court appointed new Guardians ad litem and attorneys for the children: Attorney Susan Rudnicki was appointed for James and Harrison McLean and Attorney Patrick Parry was appointed for Ford and Keith McLean. In his order, the magistrate indicated that the goals of the proceedings still included reunification; however, if home studies of the parents failed, Trumbull Children Services should file for permanent custody.
 {¶ 11} McLean was subsequently placed in jail for ninety days from the middle of July 2003, through the middle of October 2003 for violation of a protection order. On August 29, 2003, Trumbull Children Services filed a second motion for a six month extension of its temporary custody. The motion came for hearing on October 29, 2003, after which the court extended temporary custody and extended the home evaluation process in light of McLean's incarceration.
 {¶ 12} In January 2004, McLean sought a home evaluation from Mahoning County Children Services ("Mahoning Children Services"). At the time, McLean was living with his girlfriend and their child. Mahoning Children Services eventually denied the home evaluation due to the size of the residence McLean was sharing with his girlfriend and due to his girlfriend's involvement in another active case with Mahoning Children Services.
 {¶ 13} On March 19, 2004, Trumbull Children Services filed its first motion for permanent custody. The matter came before the court on April 23, 2004. Based upon the testimony presented at the hearing, the court denied the motion. In its June 11, 2004 judgment entry, the court stated that the "father has completed most of his Case Plan — but not all — Motion for Permanent Custody is denied. Father is ready to see if he can parent and support children. He is twenty months delinquent in his support. He needs to demonstrate financial ability, as well as parenting for children's special needs."
 {¶ 14} McLean failed to pay child support as ordered and never obtained a valid Ohio driver's license.
 {¶ 15} On July 1, 2004, the magistrate conducted another review hearing. In its July 21, 2004 judgment entry, the court expressed concerns about McLean's ability to meet the children's special needs, as well as McLean's residential discrepancies. The court requested Mahoning Children Services to review its home study regarding the residential discrepancies and further advise the court regarding what services would be available to the father as well as Mahoning County's protection supervision requirements.
 {¶ 16} A second motion for permanent custody was filed on September 20, 2004, due to McLean's failure to obtain approved home studies. The hearing on permanent custody occurred over a four day period in November 2004. The guardians ad litem/attorneys for the children filed their reports with the court recommending permanent custody be granted to Trumbull Children Services. On December 3, 2004, the magistrate issued his decision and determined that permanent custody should be granted to Trumbull Children Services. McLean filed objections to the magistrate's decision which were overruled by the court. On January 13, 2005, the trial court adopted the magistrate's decision granting permanent custody of the four boys to Trumbull Children Services. McLean filed a timely appeal and assigns the following errors for our review:
 {¶ 17} "[1.] The trial court lacked jurisdiction to terminate the natural father's permanent rights to custody of his natural minor children when said children were known to the state agency to be resident [sic] of Allegheny County, Pennsylvania.
 {¶ 18} "[2.] The trial court's decision to terminate the parental rights of the natural father was against the manifest weight of the evidence.
 {¶ 19} "[3.] The trial court erred to the prejudice of appellant, Keith McLean, and his minor children when it terminated appellant's parental rights without appointing legal counsel to represent the minor children in the proceeding to which they are parties by law."
 {¶ 20} McLean first contends the trial court lacked jurisdiction to adjudicate the underlying matter because, at the time Trumbull Children Services filed its dependency complaint, the children resided in Allegheny County, Pennsylvania with their mother and he resided in Mahoning County. We disagree.
 {¶ 21} Pursuant to Juv.R. 10(A) and R.C. 2151.27(A)(1), "any person having knowledge of a child who appears * * * to be a * * * dependent child may file a sworn complaint with respect to that child in the juvenile court of the county in which the child has a residence or legal settlement or in which the * * * dependency allegedly occurred." R.C.2151.27(A)(1).
 {¶ 22} The trial court determined that it possessed jurisdiction to hear Trumbull Children Services' dependency complaint based on their legal residence at 8953 Combs Road, Mesopotamia, in Trumbull County, at which address the McLeans were currently receiving welfare benefits. The fact that the McLeans owned property in other counties and have been, in the words of one of the guardian ad litem's reports, "habitually transient," does not defeat the Trumbull County Juvenile Court's exercise of jurisdiction over the children.
 {¶ 23} The court also based its jurisdiction to hear the complaint on the grounds that the alleged dependency had occurred in Trumbull County, specifically at the Newton Falls municipal building, where the "children were filthy, their clothing was badly soiled, only (1) child had shoes, and the children had a distinct odor." Where the acts constituting the neglect or dependency occur within the county of the court exercising jurisdiction, "it is immaterial whether the parent or minor child was a nonresident of the county in which the complaint was filed." In re Belk
(1954), 97 Ohio App. 114, at syllabus.
 {¶ 24} Once the McLean children were found dependent and Trumbull Children Services gained custody, the children were residing in Trumbull County where the resolution of their permanent custody was properly determined. In re Smith (1990), 64 Ohio App.3d 773, 777; R.C. 2151.06
("a child has the same residence or legal settlement as * * * [the] legal guardian or his person, or his custodian who stands in the relation of loco parentis").
 {¶ 25} McLean also argues that the Trumbull County Juvenile Court had a statutory duty to transfer this case to Armstrong Children Services which had previously commenced an investigation at the request of Trumbull Children Services. McLean relies on R.C. 2151.271, which provides that "if the child resides in a county of the state and the proceeding is commenced in a juvenile court of another county, that court, on its own motion or a motion of a party, may transfer the proceeding to the county of the child's residence * * *." Cf. Juv.R. 11. Initially, we note that transfer of a case under R.C. 2151.271 and/or Juv.R. 11 is discretionary with the juvenile court. In re Meyer (1994),98 Ohio App.3d 189, 192-193. In the absence of a motion requesting transfer of the case to Armstrong County, the lower court did not abuse its discretion for failing to do so. Moreover, Armstrong Children Services had dismissed its complaint regarding the McLean children, on the grounds that the McLeans no longer resided in Armstrong County, prior to Trumbull Children Services' filing its dependency complaint. Therefore, any transfer of venue would have been improper.
 {¶ 26} McLean's first assignment of error is without merit.
 {¶ 27} In his second assignment of error, McLean contends the trial court's decision terminating his parental rights was against the manifest weight of the evidence.
 {¶ 28} "An appellate court will not reverse a juvenile court's determination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." Inre Taylor (June 11, 1999), 11th Dist. No. 97-A-0046, 1999 Ohio App. LEXIS 2620. at *8 (citations omitted). Clear and convincing evidence is that measure of proof "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. It is more than a preponderance of the evidence, but not to the level of beyond a reasonable doubt. Id.
 {¶ 29} According to McLean, the record demonstrates Trumbull Children Services failed to make a good faith effort to ensure a fair implementation of the children's case plans. In McLean's view, a court must determine that the agency has made a good faith effort to implement the initial and comprehensive plans for the child before it can terminate an individual's parental rights. See, In re Hederson (1986),30 Ohio App.3d 187, at paragraph one of the syllabus (interpreting R.C. 2151.414(A)). McLean maintains Trumbull Children Services failed to comply with this statutory duty and, thus, the trial court erred in terminating his parental rights. We disagree.
 {¶ 30} Testimony revealed that a case plan was prepared for McLean and that, in some respects, it was followed. For instance, McLean completed: a psychological evaluation, parenting classes, and an assessment for anger management.
 {¶ 31} However, while the court set a support figure at a minimum $50 per month, per child, McLean failed to pay any child support throughout the entire time the children were in the custody of Trumbull Children Services. Moreover, testimony indicated McLean had the opportunity to request a home evaluation with Trumbull Children Services, but did not do so. These omissions are not a result of Trumbull Children Services failing to implement the case plans in good faith; rather, these features of the case plan required McLean's earnest intent to comply. McLean's failure to comply with the case plan or pursue avenues which would have assisted in reunification does not imply Trumbull Children Services did not implement that plan in good faith.
 {¶ 32} McLean's main argument attacks the court's finding of dependency. McLean alleges, "dependency and neglect determinations are a creature of statute and the statute places a strict duty upon [Trumbull Children Services] to make a good faith effort to reunify the family." R.C. 2151.414(A). McLean maintains Trumbull Children Services failed to comply with its duty and thereby failed to establish the children's dependency by clear and convincing evidence.
 {¶ 33} We emphasize that McLean stipulated to the finding of dependency at the adjudicatory hearing. "[I]t is well established in Ohio that a party may not appeal a judgment to which he has agreed." Booth v.Booth, 11th Dist. No. 2002-P-0099, 2004-Ohio-524, at ¶ 9 (citations omitted). As McLean was represented by counsel at the time the stipulation was entered and no objection was subsequently filed, McLean is not permitted to attack the court's finding of dependency. Id. ("When the parties have agreed, without objection and with the judge's approval, to enter into stipulations for the record, the court will not consider objections to such stipulations on appeal.") (citation omitted). McLean's specific arguments under his second assignment of error lack merit.
 {¶ 34} In the interest of justice, nonetheless, we shall still review the court's application of the statutory machinery governing the termination of parental rights.
 {¶ 35} For the juvenile court to grant a motion for permanent custody, the court must determine, "by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody" and "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period." R.C.2151.414(B)(1)(d).
 {¶ 36} In determining the best interest of a child for the purposes of a motion for permanent custody, "the court shall consider all relevant factors, including, but not limited to * * * (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care-givers and out-of-home providers * * *; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child * * *; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 37} In its January 13, 2005 judgment entry, the trial court determined, pursuant to R.C. 2151.414(B), that the children "have been inthe temporary custody of a public services or private placing agency for twelve or more months since the adjudication of the minor children as being dependent on June 27, 2002, twenty-two out of the past twenty-twomonth period and the children cannot be placed with either of the children's parents within a reasonable time or should not be placed with the children's parents." (Emphasis sic).
 {¶ 38} In relation to this finding, the trial court also noted that "[b]ecause neither of the parents' children services will permit the children to reside with them, the parents are found to be unfit and unsuitable for placement."
 {¶ 39} The court continued: "The basic requirement of their case plan has been to `demonstrate that they can provide for the basic needs of their children.' Despite ability to gather assets, they do not use those assets to meet their statutory obligation of child support. Nor do [they] use those assets to meet their obligation to provide legal transportation for their children should they be returned to their care. Nor have they been able to demonstrate if they have no income, how they gathered their assets in a lawful manner. They are obligated to have demonstrative independent income (work or disability), and they have not done so."
 {¶ 40} After making the finding that the children had been in the temporary custody of Trumbull Children Services "12 out of 22 months," the court could have moved directly to examining the best interests of the children. R.C. 2151.414(B)(1)(d); see, also In re C.W.,104 Ohio St.3d 163, 2004-Ohio-6411, syllabus. However, the trial court reviewed the relevant factors under R.C. 2151.414(E) to support its conclusion that the children could not be placed with either of their parents within a reasonable time or should not be placed with their parents.
 {¶ 41} First, the court found McLean had failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside their home. R.C. 2151.414(E)(1). The court noted that McLean had failed to sufficiently cooperate with Mahoning Children Services "to resolve the issues of acts of violence and satisfy them that those incidents would not occur if the children were sent there." As McLean was living in Mahoning County, he was obligated to satisfy their request to remedy his criminal record or provide the agency with documentation to clarify the charges and/or convictions. McLean had, as of the hearing, failed to do so. Moreover, the court underscored that: "The father was directed in the April 23, 2004, semi-annual review todemonstrate financial support for the children. * * * He has not done so. He still maintains he has no income, and pays no support, yet his divorce decree shows abundant assets that were divided." (Emphasis sic).
 {¶ 42} The court also found McLean has demonstrated a lack of commitment toward the children by failing to regularly support them. R.C. 2151.414(E)(4). The court pointed out that McLean possessed numerous physical assets, but has failed to use these assets to meet his support obligations.
 {¶ 43} The court then determined that all of the children have special needs and require dependable transportation for their medical appointments, therapy, and special education. R.C. 2151.414(E)(16). The court noted that, while McLean has a Virginia driver's license, he has not secured a valid driver's license in the state of Ohio.
 {¶ 44} These findings were supported by the record and are supported by clear and convincing evidence.
 {¶ 45} Finally, the court engaged in the requisite analysis to determine the best interests of the children pursuant to R.C. 2151.414(D). With respect to R.C. 2151.414(D)(1), the court noted that the children have a bond with their parents and they interact well with each other over short periods; however, the court stated, "the children separate easily from their parents, and are doing much better with their foster parents."
 {¶ 46} The court determined the children's interrelationship with their foster parents was excellent: "[t]he children have been well maintained, clean, and their developmental delays finally addressed[,] * * * [and, in the court's view] [t]he foster parents are best able to meet these needs." The court emphasized that each of the children is developmentally delayed; to wit, each needs an individual education plan and require various types of medical attention. The court stated that, with the exception of Keith, none of the children are toilet trained. In light of this, the court determined that "[a]ll four of the boys need a structural approach to behavior intervention. This was not being provided by their parents, and it is not seen that the parents can currently provide this."
 {¶ 47} Next, pursuant to R.C. 2151.414(D)(2), the court determined that the wishes of the children, as expressed through the guardians ad litem, indicate that their best interests would be served by granting permanent custody to Trumbull Children Services. The reports of each guardian ad litem strongly recommended permanent custody to Trumbull Children Services.
 {¶ 48} The court again underscored the custodial history of the children pursuant to R.C. 2151.414(D)(3): The children have been in the temporary custody of Trumbull Children Services for the last 28 months.
 {¶ 49} Finally, the court emphasized the children's need for a legally secure, permanent placement which cannot be achieved without granting permanent custody to Trumbull Children Services. R.C. 2151.414(D)(4).
 {¶ 50} While the court found none of the factors under R.C.2151.414(E)(7) through (12) relevant, we believe the courts findings support its decision that granting permanent custody to Trumbull Children Services is in the children's best interests. The courts findings and determinations are supported by clear and convincing evidence in the record. Accordingly, the trial court's determination granting permanent custody to Trumbull Children Services was not against the manifest weight of the evidence. McLean's second assignment of error is without merit.
 {¶ 51} In his final assignment of error, McLean contends the trial court erred by not appointing independent legal counsel to represent the children. In June 2003, as noted above, the court appointed Patrick Parry to serve as "Guardian Ad Litem and Counsel for Ford and Keith McLean" and appointed Susan Rudnicki as "Guardian Ad Litem and Counsel for James and Harrison McLean."
 {¶ 52} The children who are the subject of a motion to terminate parental rights have a right to representation by counsel in that proceeding based on their status as parties to the proceeding. In reWilliams, 101 Ohio St.3d 398, 2004-Ohio-1500, at ¶ 17; see Juv.R. 4(A) ("[e]very party [to a juvenile court proceeding] shall have the right to be represented by counsel"); R.C. 2151.352 ("[c]ounsel must be provided for a child not represented by the child's parent, guardian, or custodian"). The right to counsel does not always require the appointment of separate counsel. "Where there is no conflict of interest, a child's guardian ad litem may act as counsel for the child. * * * However, the juvenile court must expressly state that it is making a `dual appointment' for the guardian ad litem to act as the child's attorney and must also make a finding that no conflict of interest exists. Where a conflict exists, as when the guardian's recommendation regarding permanent custody differs from the child's wishes, the guardian ad litem cannot serve as counsel and the court must appoint independent counsel to represent the child." In re Williams, 11th Dist. Nos. 2003-G-2498, 2003-G-2499, 2003-Ohio-3550, at ¶ 20 (citations omitted).
 {¶ 53} Clearly, the practice of permitting an attorney to serve the dual role of counsel and guardian ad litem is permissible. The threshold condition for serving in such a capacity is the lack of a conflict of interest. To determine whether a conflict exists, it is imperative to review the general duties of both a guardian ad litem and an attorney. InWilliams, the Ohio Supreme Court noted that the duty of a guardian ad litem to a ward is to recommend to the court what the guardian believes is in the best interest of the ward. 2004-Ohio-1500, at ¶ 18. Alternatively, the duty of counsel to a client requires counsel to provide zealous representation of the client's interests. Id. While these obligations may conflict under certain circumstances, there is no necessary conflict between the respective roles and obligations of a guardian ad litem and an attorney.
 {¶ 54} In the case sub judice, there were no express or implied conflicts in the dual-representation provided by Attorneys Rudnicki and Parry. Due to the age of the children (Ford: 7 yrs; Keith: 6 yrs; James: 5 yrs; and Harrison: 4yrs) and their special needs (Ford: Mild mental retardation; Keith: Delays in language; James: AD/HD, developmental delays, mild autism; and Harrison: Severe developmental delays), the guardians ad litem did not betray the children's legal interests by recommending what, in the guardians' view, was in the children's best interests. The trial court did not err in appointing Attorneys Rudnicki and Parry to serve the dual capacity of guardians ad litem and counsel for the children. McLean's final assignment of error lacks merit.
 {¶ 55} For the above reasons, McLean's three assignments of error are without merit and the judgment of the Trumbull County Court of Common Pleas terminating McLean's parental rights over the subject children is therefore affirmed.
Ford, P.J., concurs, O'Toole, J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.
[1] The January 13, 2005 judgment entry also terminated the parental rights of Denise McLean nka Johns. Denise did not file a notice of appeal to the lower court's judgment entry and is not a party to the current appeal.