JOURNAL ENTRY AND OPINION
{¶ 1} Appellant-mother challenges the judgment of the juvenile court granting permanent custody of her child, K.M.,[1] to appellee, the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the reasons that follow, we affirm.
 {¶ 2} On December 31, 2001, CCDCFS filed a complaint alleging that K.M. and a sibling were abused, neglected and dependent. The CCDCFS alleged, inter alia, that the parents had failed to provide for the basic needs of the children, that the home was in deplorable condition, that the children did not have proper hygiene, were developmentally handicapped and that parents could not provide proper care for them. The CCDCFS further alleged that the children had limited involvement with their father who had been accused of abusing an older child. The CCDCFS requested temporary custody of the children.
 {¶ 3} Attorney Mark Witt was appointed to serve as guardian ad litem for the children and the matter was heard on April 18, 2002. The Magistrate determined that the allegations of the complaint were proven by clear and convincing evidence and the children were placed in the temporary custody of the CCDCFS.
 {¶ 4} A Case Plan implemented for the family required the mother to participate in individual and family therapy and utilize various services in order to cope with stress. She was also to participate in a parenting program, ensure that the home was repaired, and implement a plan to protect K.M. from her father, in light of the prior allegations of abuse of the eldest child. The father was to complete anger management and individual counseling.
 {¶ 5} Temporary custody was extended twice pursuant to R.C. 2151.353
and R.C. 2151.415. Thereafter, on September 26, 2003, the CCDCFS filed a motion to modify temporary custody to permanent custody, alleging, essentially, that the parents had not remedied the problems that cause the initial placement, had failed to comply with the objectives of the case plan, and have not obtained safe housing. The motion proceeded to trial on November 2, 2003.
 {¶ 6} Dr. Randall Baenen, a consulting psychologist for juvenile court testified that he evaluated the mother in June 2004 and in August 2002. He opined to a reasonable degree of psychological certainty that permanent assignment of custody of the child to the CCDCFS was in the child's best interests. According to Dr. Baenen, the mother has struggled to address the elements of the case plan and has not sufficiently addressed the relevant issues necessary to take care of the child. Specifically, Dr. Baenen also testified that there was strong evidence that the girl was seriously damaged by that environment, and suffered serious social delays. He noted that the girl demonstrated bed-wetting, voluntary urination on her clothing when angry or upset, aggressiveness, selective mutism, and social anxiety.
 {¶ 7} Since her removal from the home, the girl has made significant social, academic, and psychological progress. To help the girl thrive, it is necessary for her to have a secure, predictable environment where she can feel safe.
 {¶ 8} Dr. Baenen noted issues with the mother's ability to protect the girl in light of allegations that the father had inappropriate contact with an older child and the mother has never terminated her relationship with him and remains skeptical of the allegations. This situation can also cause the child to feel abandoned by both parents.
 {¶ 9} Finally, Dr. Baenen opined that assuming that the mother's claim that she had undergone therapy and had made improvements in the area of emotional stability and independence, he believed that the mother would still lack the capacity to adequately parent and protect the child.
 {¶ 10} On cross-examination, Dr. Baenen admitted that he did not obtain the mother's psychological records. He stated, however, that he assumed that she had improved while in therapy. He conceded that some repairs had been made at the home. He also acknowledged that the mother had complied with visitation with the girl and had completed parenting classes but he stated that it was unclear how much the mother had actually incorporated from the classes. Overall, he described the mother's progress as modest and slow in coming. He did not believe that the mother had the emotional capacity to safely raise the girl in light of her emotional, developmental, and social problems. He indicated that the girl was close to her brother who was emancipated, but this relationship could be maintained despite the permanent placement and was not as important as the girl's need for a good permanent placement. Dr. Baenen stated that although the mother saw less of the father since he suffered a stroke, he regularly went to the home. According to Dr. Baenen, the woman was in denial about the impact upon the children and remained dependent upon him.
 {¶ 11} He further admitted that he did not interview the father because he did not appear for his appointment. He interviewed the brother once. His conclusions were the result of his extensive questioning of the mother, her results on the MMPI, and her parenting history. He noted that there was a suspicion of sexual abuse but his conclusions were not dependent upon such allegations being proven, given the emotional, social, and behavioral issues presented in the case and the girl's special needs.
 {¶ 12} The state also presented evidence that the child repeatedly expressed to her therapist, Hannah Castillo, that she wanted to remain with her foster family. In addition, other children who were removed from the mother's care demonstrated significant developmental and psychiatric issues. They have improved while in foster care.
 {¶ 13} Social worker Hope Gula testified that she has been assigned to the case since 1999. The mother was assigned a parenting aid to help her de-clutter the home and improve her parenting skills. The mother made minimal progress at this time and the agency received referrals regarding the other children. She participated in domestic violence services, as a result of allegations that she had been abused by the father, but was regarded as a passive participant. The mother attended parenting classes but she was referred to individual counseling to help her accept the sex abuse allegations. She participated in individual counseling with Dr. Rakesh Ranjan and also received in-home counseling in 2002.
 {¶ 14} The father also attended the program but he missed a number of sessions and it was unclear whether he had the appropriate I.Q. level for the program. The father completed a sex offender assessment, and as the result of this assessment, intensive counseling was recommended.
 {¶ 15} Gula opined that permanent placement with the CCDCFS is in the girl's best interests. She asserted that the girl needs stability and that neither parent could not provide it for this special needs child. According to Gula, the house has been rehabilitated but still needs a lot of work. The mother completed parenting classes but was not able to apply what she had learned. She has made some progress but is still co-dependent upon and enmeshed with the father. Gula expressed concern regarding the mother's ability to follow through on medical and special-needs appointments for the girl. The girl is emotionally and psychologically stable in her foster placement and has progressed there. She has also expressed a desire to remain with her foster mother.
 {¶ 16} Finally, Gula testified that the girl has difficulty after visiting with her mother, and engages in regressive behaviors.
 {¶ 17} On cross-examination, Gula acknowledged the mother's efforts at meeting the case plan objectives. She also acknowledged that the foster mother did not want to maintain visitation with the mother because of the post-visitation regression that the girl experiences. She admitted that the foster mother was unmarried but had lived with two different people since the placement.
 {¶ 18} The mother presented evidence in opposition to the placement. Dr. Rakesh Ranjan testified that he has treated the mother, the girl, and another sibling for approximately one year beginning in March 2001. The other sibling had a number of disorders. The girl had elective mutism and a mood disorder. The mother was diagnosed as suffering from major depression without psychotic features. He prescribed antidepressant for her which she is still taking. He sees the mother once a month and notes that she has made steady improvement. Her depression is now in remission, her assertiveness has improved, she has good insight, and is well-motivated.
 {¶ 19} Dr. Ranjan opined that the mother is capable of taking care of the girl. She has the ability to care for herself and properly socialize and interact and she interacts appropriately with her children. The father no longer resides at the home and has been at a nursing facility since he suffered a stroke. She reports that she has had the home repaired. Finally, according to Dr. Ranjan, the mother misses the girl and would like to have her returned to her custody.
 {¶ 20} On cross-examination, Dr. Ranjan stated that elective mutism can be caused by trauma. He also admitted that he did not speak to the child's therapist and had not spoken to the child for two years. Not all of the therapeutic intervention has addressed her parenting skills or his potential risk to her children, however.
 {¶ 21} Mark Witt, the girl's guardian ad litem, testified that he has issued a report and recommendation in support of the motion for permanent custody. The mother's home was no longer in deplorable condition and had improved. The woman had also become more cooperative and appeared better able to care for herself, but she continued to struggle with depression. Witt further noted that an investigation undertaken by the CCDCFS found the father to be an "indicated abuser" but he now resides in an assisted living home. Witt noted that the girl did not wish to return home but was troubled by the foster mother's stated intention of discontinuing visitation with the mother. Although he recommended that the motion for permanent custody be granted, he was unsure that "clear and convincing" supporting evidence; opining instead that the motion was supported by "a preponderance" of the evidence.
 {¶ 22} On cross-examination, he admitted that it was in the girl's best interest insofar as she had progressed while in foster care.
 {¶ 23} The trial court subsequently determined, by clear and convincing evidence, that the child cannot and should not be placed with either parent within a reasonable period of time for the following reasons:
 {¶ 24} "1) Following the placement of the child outside the home, mother has failed continuously and repeatedly to substantially remedy the condition causing the child to be placed outside the home.
 {¶ 25} "2) The parents have failed to comply with case plan objectives that were designed to reunify the family although referrals were made to Parenting education classes, anger management classes, batterer's intervention counseling, mental health counseling * * *.
 {¶ 26} "3) Parents have not obtained safe and appropriate housing in which to raise the child.
 {¶ 27} "4) The parents [have an older child who was removed from the family and committed to the care of the CCDCFS following allegations of sexual abuse]."
 {¶ 28} The court further determined that the order of permanent custody is in the child's best interest.
 {¶ 29} The mother now appeals and assigns two errors for our review.
 {¶ 30} The mother's first assignment of error states:
 {¶ 31} "The juvenile court erred in terminating [Ms. M's] parental rights when the juvenile court found that it was in the best interests of the child."
 {¶ 32} Within this assignment of error, the mother complains that the CCDCFS failed to show, by clear and convincing evidence, that it should have permanent custody of K.M. The mother therefore argues that the trial court's judgment was against the manifest weight of the evidence. In particular, she contends that she has completed parenting classes, her depression is now in remission and she is able to care for the girl, and the father is now living in a nursing home.
 {¶ 33} R.C. 2151.353(A) provides that the court may commit a child to the permanent custody of a public children services agency if it determines by clear and convincing evidence, accordance with R.C.2151.414(E), that the child cannot or should not be placed with either parent in a reasonable time, and that pursuant to R.C. 2151.414(D), permanent custody is in the best interest of the child.
 {¶ 34} "Clear and convincing evidence" is that quantum of evidence which instills in the trier of fact a firm belief or conviction as to the allegations sought to be established. In re Holcomb (1985),18 Ohio St.3d 361, 368, 481 N.E.2d 613; Cross v. Ledford (1954),161 Ohio St. 469, 477, 120 N.E.2d 118. Where the degree of proof required to sustain an issue is clear and convincing, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof. In re B.L.,
Franklin App. No. 04AP-1108, 2005-Ohio-1151; In re Gomer, Wyandot App. No. 16-03-19, 2004-Ohio-1723. Our review of the weight of the evidence in a permanent custody case is limited to whether competent, credible evidence exists to support the trial court's factual determinations. Inre Starkey, 150 Ohio App.3d 612, 2002-Ohio-6892, 782 N.E.2d 665; In reM.W., Cuyahoga App. No. 83390, 2005-Ohio-1302.
 {¶ 35} Ohio Revised Code Section 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. That statute provides as follows:
 {¶ 36} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 37} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 38} "(b) The child is abandoned.
 {¶ 39} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 40} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 41} The court must determine by clear and convincing evidence that one or more of the factors listed in R.C. 2151.414(E) exist in order to find that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C2151.414(E); see also In re William S. (1996), 75 Ohio St.3d 95,1996-Ohio-182, 661 N.E.2d 738, syllabus. These factors include whether the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. R.C. 2151.414(E). In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. R.C. 2151.414(E).
 {¶ 42} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 43} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 44} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 45} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 46} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 47} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." {¶ 48} In this matter, the trial court determined that K.M. was in the custody of CCDCFS for more than twelve of the past twenty-two months, and she remained with the same foster care provider for the past two years. The record also demonstrated that she cannot and should not be placed with either of her parents within a reasonable time. Her parents have failed, for over six months, to remedy the conditions that had caused K.M. to be placed outside her home, had failed to implement changes needed for her return to the home and showed an inability to provide an adequate permanent home for her. Although her mother had endeavored to meet the requirements of the case plan, her progress was described as "modest." She was regarded as a passive participant who had not incorporated the skills she needed to adequately parent and protect the child. Moreover,
 {¶ 49} "Completion of a case plan does not, in and of itself, require that children be reunified with parents who have failed to remedy the conditions which led to removal in the first place. This argument, if accepted, would convert the goal of the reunification process into one of mere rigid compliance with the rules of CCDCFS rather than a process in which the parent learns to exercise her own judgment in a manner which will insure the protection and well-being of the children." In re J.L.,
Cuyahoga App. No. 84368, 2004-Ohio-6024, citing In Re McCutchen (March 8, 1991), Knox App. No. 90-CA-25.
 {¶ 50} The mother remained dependent upon the father and he still had access to the home. Further, the mother fails to appreciate the risk presented in light of the allegations concerning the father. Evidence demonstrated that the house was not fully repaired and de-cluttered and the evidence demonstrated that the mother lacked the emotional capacity to safely raise the girl in light of her emotional, developmental, and social problems.
 {¶ 51} The court had before it sufficient evidence to find, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the CCDCFS. The child repeatedly stated that she wishes to remain with the foster mother. She has special needs in light of her emotional, developmental and social issues and is in need of a safe, secure, placement where those needs will be adequately addressed. Clear and convincing evidence supports the trial court's determination that the CCDCFS should have permanent custody of K.M.
 {¶ 52} This assignment of error lacks merit.
 {¶ 53} The mother's second assignment of error states:
 {¶ 54} "The juvenile court erred in terminating [Ms. M's] parental rights when the juvenile court failed to appoint independent legal counsel to represent the minor child."
 {¶ 55} Children who are the subject of a motion to terminate parental rights have a right to representation by counsel in that proceeding based on their status as parties to the proceeding. In re McLean, Trumbull App. No. 2005-T-0018, 2005-Ohio-2576; In re Williams, 101 Ohio St.3d 398,2004-Ohio-1500, 805 N.E.2d 1110; see, also, Juv.R. 4(A) ("every party [to a juvenile court proceeding] shall have the right to be represented by counsel"); R.C. 2151.352 ("counsel must be provided for a child not represented by the child's parent, guardian, or custodian").
 {¶ 56} The juvenile court may be excused from appointing independent counsel to represent a child-party in a proceeding to terminate parental rights in certain circumstances.
 {¶ 57} "Where there is no conflict of interest, a child's guardian ad litem may act as counsel for the child. Juv.R. 4(C); R.C. 2151.281(H). However, the juvenile court must expressly state that it is making a "dual appointment" for the guardian ad litem to act as the child's attorney and must also make a finding that no conflict of interest exists. * * * In re Duncan/Walker Children (1996), 109 Ohio App.3d 841,673 N.E.2d 217. Where a conflict exists, as when the guardian's recommendation regarding permanent custody differs from the child's wishes, the guardian ad litem cannot serve as counsel and the court must appoint independent counsel to represent the child. * * * *." In reWilliams, Geauga App. Nos. 2003-G-2498, 2003-G-2499, 2003-Ohio-3550 (citations omitted).
 {¶ 58} In this matter, there were no express or implied conflicts barring guardian ad litem Mark Witt from serving as the child's attorney, as he recommended a disposition which was not in conflict with the wishes of K.M. Independent counsel was not needed.
 {¶ 59} The second assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Juvenile Division of the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Calabrese, Jr., J., concur.
[1] We refer to the child by her initials pursuant to this court's established policy regarding non-disclosure of identities in juvenile cases.