[Cite as *In re S.D.*, 2014-Ohio-156.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| S.D. | : | CASE NO. CA2013-08-138 |
| | : | O P I N I O N<br>1/17/2014 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2011-0335

Michael T. Gmoser, Butler County Prosecuting Attorney, Kimberly L. McManus, Government Services Center, 315 High Street, 11th Fl., Hamilton, Ohio 45011, for appellee, Butler County Children Services

Jeannine Barbeau, 3268 Jefferson Avenue, Cincinnati, Ohio 45220, for appellant, A.D.

Carol Gardner-Stark, 9435 Waterstone Blvd., Suite 140, Cincinnati, Ohio 45249, guardian ad litem

Jeremy Evans, 306 South Third Street, Hamilton, Ohio 45011, guardian ad litem (for mother)

**RINGLAND, J.**

{¶ 1} Appellant, the biological mother of S.D., appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of the child to a children services agency.

{¶ 2} Appellant is the biological mother of four children. S.D., the child involved in this case, is her youngest child. The Butler County Children Services Agency has been involved with appellant since 1992 when she was a juvenile. Prior to involvement in the case at bar, the agency received several calls regarding problems with appellant and her children. The agency investigated these concerns involving the children and was assisting appellant without opening a formal case. In June 2010, the Butler County Juvenile Court placed one of appellant's children in the legal custody of the child's father.

{¶ 3} Around August 2010, the agency became actively involved with appellant and the two children still in the home when an investigation revealed concerns regarding the condition of the home, appellant's inability to maintain a stable family environment, and because appellant seemed to be overwhelmed parenting the children.

{¶ 4} The agency met with appellant and drafted a case plan and offered voluntary services to aid appellant, including parenting education, counseling, a psychological evaluation, M.R.D.D. services and educational services for the children. There were initially problems locating appellant, but eventually she agreed to sign the case plan without the M.R.D.D. services. The agency worked with appellant for several months, but little progress was made and the agency eventually filed dependency complaints for the two children in the home. These children were adjudicated dependent on May 18, 2011, and were eventually placed in the custody of appellant's maternal aunt.

{¶ 5} A case plan was approved by the court to address the issues resulting in the removal of these two children. This case plan included the same services as were previously offered to appellant: counseling, a parenting program, a psychiatric evaluation, participation in services for developmental disabilities. The plan also required appellant to obtain stable housing and income.

{¶ 6} While the case involving these two children was ongoing, the child at issue in

this case, S.D., was born. Because of the concerns in the older siblings' case, a lack of progress by appellant, and additional concerns which had arisen, a dependency complaint was filed on behalf of S.D. on July 29, 2011, the day she was born. During the pregnancy, appellant stated that her boyfriend, B.C., was the child's father. At the time of S.D.'s birth, appellant indicated that K.D., her current boyfriend, was the child's father. Paternity testing excluded both men and the child's father remains unknown.

{¶ 7} S.D. was adjudicated dependent on January 6, 2012. The case plan included the same requirements as the case plan involving the older siblings. Appellant was also required to participate in an observed visit with S.D. at CDC Medical Health Services. Appellant made little progress on the case plan and the agency filed for permanent custody of S.D. on October 4, 2012.

{¶ 8} At the permanent custody hearing, the agency caseworker testified and explained the history of the agency's involvement with appellant. The caseworker also explained the requirements of the case plan and detailed appellant's failure to complete the plan. The caseworker described in detail the efforts he and the agency expended to help appellant, but appellant failed to follow-through with the case plan requirements.

{¶ 9} The visitation supervisor testified and discussed her observations while supervising visits between both appellant and S.D. and appellant and the two older siblings. She also supervised visits in the beginning of the case with all three children present. The visitation supervisor indicated that while there is a bond between appellant and her children, appellant has a difficult time caring for all three and visits were "chaotic." She also described appellant as becoming overwhelmed and frustrated when dealing with a sick child and with discipline problems.

{¶ 10} Two instructors from the Development of Living Skills (DLS) program testified and explained their interaction with appellant through the in-home parenting program DLS

provides. Both indicated that appellant regularly missed sessions and both expressed concerns with appellant's ability to parent.

{¶ 11} The Court Appointed Special Advocate (CASA) assigned to the case testified that she had observed appellant at visits. The CASA stated that she observed problems with appellant's ability to parent effectively, both with S.D. and the two older siblings. The CASA indicated that she observed S.D. in the foster home and the child has a close bond with the foster mother.

{¶ 12} The foster mother testified that S.D. was placed in her home at birth and has remained in the home since that time. She described the child's routine and developmental progress while in her care. The foster mother indicated that she would be interested in adopting S.D. if permanent custody were granted.

{¶ 13} Appellant's husband and his grandmother both testified and discussed their observations of appellant, indicating she was a good mother. A cousin of appellant's husband testified that she was hospitalized for a period of time after a car accident and appellant watched her three children. She indicated that appellant was able to parent the children well and there were no problems.

{¶ 14} Appellant testified at the hearing and discussed her involvement with the agency, her visits with S.D. and her progress on the case plan. Appellant indicated that she did not complete the DLS program, but stated that she graduated from an eight-session parenting class in Dayton. Appellant also explained that she did not take the Zoloft that was prescribed as a result of the psychiatric evaluation because she did not feel she was depressed. She indicated she is married now and in a stable home.

{¶ 15} After considering the evidence, a magistrate issued a decision granting permanent custody of S.D. to the agency. The trial court overruled objections to the magistrate's decision on July 2, 2013.

{¶ 16} Appellant now appeals the trial court's decision to grant permanent custody of S.D. to the agency and raises the following two assignments of error for our review;

{¶ 17} Assignment of Error No. 1:

{¶ 18} THE JUVENILE COURT LACK[ED] JURISDICTION TO ADJUDICATE THIS CASE OR [TO] GRANT THE PERMANENT CUSTODY MOTION

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE JUVENILE COURT'S DECISION TO GRANT PERMANENT CUSTODY TO BUTLER COUNTY CHILDREN SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AN ABUSE OF DISCRETION, CONTRARTY TO LAW, WAS NOT SUPPORTED BY SUFFICIENT CLEAR AND CONVINCING EVIDENCE AND WAS CONTRARY TO THE BEST INTEREST OF THE CHILD.

{¶ 21} In her first assignment of error, appellant argues that the Butler County Juvenile Court did not have jurisdiction over the case. Specifically, appellant contends that because she was living in Montgomery County at the time S.D. was born, the Butler County Court of Common Pleas did not have jurisdiction over the case. We find no merit to appellant's argument.

{¶ 22} The juvenile court has exclusive, original jurisdiction in matters involving an abused, neglected or dependent child. R.C. 2151.23 (A)(1); *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, ¶ 11. The proper venue for an abuse, neglect or dependency complaint is the county in which the child has a legal residence or the county in which the abuse, neglect or dependency occurred. R.C. 2151.27(A)(1); Juv.R. 10; *In re W.W.*, 190 Ohio App.3d 653, 2010-Ohio-5305, ¶ 25-26 (11th Dist.).

{¶ 23} At the initial shelter care hearing on August 1, 2011, the caseworker testified that there were issues in locating appellant around the time of S.D.'s birth and there had been some concern that appellant was trying to hide the baby from the agency. Appellant

testified that she had been staying with her boyfriend, K.D., in Dayton, for two or three days before the child was born and that the child was born at Miami Valley Hospital because it was the closest hospital to the boyfriend's residence. Appellant indicated that S.D. was currently in the hospital and that on the child's release, she would take the child "either to my house or to my grandma's." She stated that her house was on 15th Avenue in Middletown.

{¶ 24} At the dependency hearing on January 6, 2012, appellant testified that she was living in Montgomery County at the time the child was born. She testified that she had been living with her boyfriend at his house in Dayton since July 1, 2011, and last stayed in Middletown on June 30. She indicated that she had not reported her move to Dayton to her caseworker because it was "none of his business." Appellant was questioned about two Middletown police reports dated July 1 and July 19, 2011, describing altercations that involved appellant. In these reports, appellant told police that her address was in Middletown. In response to questioning regarding these reports, appellant explained that she was living in Dayton at the time, but spending time in Middletown.

{¶ 25} Both at the hearing and in its written decision, the trial court found appellant's testimony that her legal residence at the time of the child's birth was in Montgomery County was not credible. It is well-established that issues of credibility are for the juvenile court, rather than this court, to determine. *In re G.N.,* 170 Ohio App.3d 7, 2007-Ohio-126, ¶ 24 (12th Dist.). The juvenile court has the opportunity to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *In re B.J.*, 12th Dist. Butler No. CA2011-10-192, 2012-Ohio-3127, ¶ 20; *In re C.B. et al.,* 12th Dist. Butler Nos. CA2008-01-002, CA2008-01-003, 2008-Ohio-5543, ¶ 18. Accordingly, we find no error in the trial court's determination that appellant's residence was in Butler County at the time of S.D.'s birth.

{¶ 26} In addition, the record contains evidence that appellant moved several times

and at the time the siblings' case began, was living on and off with friends and relatives. Appellant herself testified that she was back and forth between her grandmother's house and her own residence. Courts have determined that when acts of neglect or dependency occur in a county, that county retains jurisdiction over parents who are "habitually transient" even though they may have residences in other counties. See *In re Zoebel*, 5th Dist. Tuscarawas No. 2007AP020012, 2007-Ohio-3355; *In re McLean*, 11th Dist. Trumbull No. 2005-T-0018, 2005-Ohio-2576. Accordingly, appellant's first assignment of error is overruled.

{¶ 27} In her second assignment of error, appellant argues the trial court's decision to grant permanent custody was against the manifest weight of the evidence. Appellant contends that she complied with case plan services, maintained a bonded relationship to the child with weekly visits, has remedied the conditions that led to removal, and she wants to be reunified with her child. She contends she has an appropriate home, has sufficient income and is able to provide for the child and her needs.

{¶ 28} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey,* 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.). A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers*, 138 Ohio App.3d 510, 520 (12th Dist.2000). As an appellate court reviewing a decision granting permanent custody, we neither weigh the evidence nor assess the credibility of the witnesses, but instead determine whether there is sufficient clear and convincing evidence to support the juvenile court's

decision. See *In re Dunn,* 5th Dist. Tuscarawas No. 2008AP030018, 2008-Ohio-3785.

{¶ 29} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.,* 12th Dist. Warren Nos. CA2009-10-139, CA2009-11-146, 2010-Ohio-1122, ¶ 22.

{¶ 30} The juvenile court found by clear and convincing evidence, and appellant does not dispute, that S.D. has been in the temporary custody of the agency for more than 12 months of a consecutive 22-month period as of the date the agency filed the permanent custody motion. However, appellant does dispute the juvenile court's finding that granting permanent custody of the children to the agency is in the child's best interest.

{¶ 31} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has

- 8 -

been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 32} With respect to R.C. 2151.414 (D)(1)(a), the juvenile court found that appellant had been consistent in attending supervised visits at the agency and there was a bond between appellant and the child. However, the court found that concerns were raised regarding appellant's lack of engaging the child in play and dealing with S.D. when the child was not feeling well. The court further found that the agency worker who supervised visits with all three children described the visits as "chaotic," sometimes to the point that a worker would have to intervene. In addition, there were a few times appellant terminated the visits early due to anger and frustration. With regard to this factor, the court also found that S.D. has resided in the same foster home since birth. Both the CASA and guardian ad litem indicated the child has a significant bond with the foster mother and foster grandmother and that the foster mother has ensured that the child's developmental and medical needs are met.

{¶ 33} In considering R.C. 2151.414(D)(1)(b), the juvenile court indicated that the child is only 18 months old and no in camera interview was conducted. The court stated that it had considered the report and recommendations of the child's guardian ad litem who recommended granting permanent custody.

{¶ 34} With respect to R.C. 2151.414(D)(1)(c), the juvenile court found that at the time of the child's birth, appellant already had an open case with two of the child's older siblings and the child was placed in temporary custody at birth due to ongoing concerns about

- 9 -

appellant's stability and ability to parent. The court indicated that the agency filed the motion for permanent custody after the child had been in agency custody for 12 months of a consecutive 22-month period. The court found that S.D. has been in the temporary custody of the agency for approximately 18 months.

{¶ 35} In considering R.C. 2151.414 (D)(1)(d), the juvenile court found that the child is in need of a legally secure placement, as she has been in the agency's custody since birth. The court found that S.D. was removed from appellant's custody at birth due to concerns about appellant's ability to parent and to provide a stable environment for her children. The court further found that appellant does not have custody of the two older siblings who were placed with their maternal aunt, nor does she have custody of another child the court placed in the legal custody of the child's father.

{¶ 36} The court found that appellant has not completed case plan services, despite the fact that these services were offered at the time the siblings' case was opened in December 2010. The court found that appellant participated in a psychiatric consultation and was prescribed Zoloft for depression. However, appellant failed to have the prescription filled and failed to return for follow-up consultations.

{¶ 37} The court also indicated that on April 24, 2012, it ordered appellant to participate in a psychological evaluation and an observed visit with the child through CDC Mental Health Services. The court found that appellant failed to participate in either service and often became belligerent with the caseworker when he would advise her of referrals he made for the services. The court noted that the psychological evaluation may have provided the agency with valuable information about services that may have helped appellant to parent her children.

{¶ 38} The trial court indicated that agency had received information that appellant may have significant cognitive limitations and the court ordered appellant to become involved

with the Board of Developmental Disabilities to determine if further services could be provided. The court found that appellant adamantly refused to participate in this service, despite the fact that she receives Social Security Supplemental Income for a learning disability.

{¶ 39} In addition, the court found that appellant was unsuccessfully terminated from the Development of Living skills two different times. The instructors who worked with appellant both testified that appellant was inconsistent in attending the program and she failed to demonstrate an ability to grasp and implement the lessons that were taught, particularly in the area of child development. The court noted an incident in which appellant continued to insist that at five months old, S.D. could speak in sentences, despite the instructor explaining that this was not developmentally appropriate.

{¶ 40} The court also found that the worker who supervised visits described appellant as acting more as a peer to the children than as a parent, and that the worker described appellant's sometime argumentative and explosive personality when workers suggested appellant not do something, such as telling appellant she should not smoke when pregnant. The court also found that the CASA assigned to the case echoed the concerns of the DLS instructors and agency workers regarding appellant's ability to understand child development, and appellant's refusal to follow suggestions to engage the child in appropriate developmental activities during visits.

{¶ 41} The court also found that appellant was ordered to participate in individual counseling, but was unsuccessfully discharged from the Middletown counseling center due to a lack of consistent attendance. The court indicated appellant began services in Montgomery County after moving there, but again failed to consistently attend counseling. The court noted that appellant testified that she is attending counseling in Dayton with a different therapist, but did not present any testimony regarding her compliance and progress.

The court indicated that throughout the case, appellant's credibility about her participation in case plan services has often been suspect.

{¶ 42} The court also found that appellant's ability to maintain a stable residence was an issue in the siblings' cases. Although appellant obtained a three-bedroom residence in Montgomery County through Section 8, the housing authority discovered appellant falsely stated she had custody of S.D.'s two siblings on the application and her allowance was reduced to a one-bedroom residence. The court further noted that appellant "became belligerent on her testimony about this subject, placing her predicament squarely on BCCS, rather than taking responsibility for falsifying her application." The court further found that appellant did not advise the housing authority she had married, nor did appellant inform the caseworker when she and her husband moved into a new residence in January 2013.

{¶ 43} Finally, the court considered whether any alternative placements were available for the child. The court found that the relative who has S.D.'s siblings and another relative who was a temporary custodian of the siblings were both approached about placement of S.D. in their homes, but neither relative was interested in obtaining custody of the child. The court found that the agency conducted a home study on appellant's husband, but he was not approved. The court determined that no other relatives or persons were available to parent the child.

{¶ 44} The court determined that appellant was unable to show that she could provide for the care and needs of S.D. on a consistent basis. The court explained that appellant failed to demonstrate an understanding of child development or the parenting ability that is necessary. The court determined that it was not in S.D.'s best interest to "gamble on the possibility that the mother may be able to obtain stability in the future." The court concluded that it was appellant's choice not to follow the recommendations of the caseworker, case plan service providers and the mental health treatment providers that were needed in order to

rectify the issues that caused S.D. to remain in foster care. The court determined that based on these findings, a legally secure placement could not be achieved without a grant of permanent custody to the agency.

{¶ 45} In addition, the juvenile court considered R.C. 2151.414(E)(1), which provides:

Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 46} The court stated that appellant was required to participate and successfully complete a psychological evaluation and follow the recommendations, complete an in-home parenting program, an observed visit at CDC Mental Health Services, and individual counseling. Appellant was also expected to maintain an appropriate residence and stable source of income. The court reiterated its previous findings that the only area of the case plan that appellant was able to "demonstrate marginal success" was in maintaining a residence, but that she recently lost her three-bedroom residence because of falsifying the application. The court noted that appellant receives SSI income and her husband appears to help her financially. However, based on evidence presented at the hearing, the court found there was some question regarding the stability of their marriage.

{¶ 47} The court reiterated the fact that the concerns that existed at the time the siblings were removed still existed at the time S.D. was born. The court determined that despite repeated orders, appellant failed to complete the psychological evaluation, adamantly refused to even meet with the Board of Developmental Disabilities in both Butler and

Montgomery Counties, and failed to successfully complete the DLS program despite two attempts. Based on these considerations, the trial court determined that despite reasonable case planning and diligent efforts by the agency, appellant failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home.

{¶ 48} Finally, the court considered the fact that the guardian ad litem and CASA both recommended permanent custody and that the foster mother was interested in providing a permanent home for the child.

{¶ 49} In conclusion, the court found that although the evidence demonstrates that appellant loves her child and she regularly attended scheduled visitations, there was clear and convincing evidence that appellant cannot meet the child's developmental needs. In addition, the court found that the child has already languished in the agency's temporary custody for 18 months and it was not in the child's best interest to extend more time, as appellant had more than two years to demonstrate progress on the case plan, as the requirements were essentially the same as those in the siblings' case.

{¶ 50} After carefully reviewing the record in this case, we find no error in the trial court's determination that permanent custody was in the child's best interest. Appellant argues the trial court's determination is in error because she is bonded with the child, she could provide a legally secure placement, and that she completed case plan services including counseling, parenting classes, obtaining housing and income.

{¶ 51} However, the court carefully addressed these arguments in its decision and the court's findings are supported by the record. Although the court found there was a bond between appellant and child, the court determined that the best interest factors weighed in favor of granting permanent custody. In addition, as discussed above, the court addressed the reasons why appellant was not able to provide a legally secure placement.

{¶ 52} In addition, we find no error in the court's determination regarding appellant's lack of progress on the case plan. The court specifically considered appellant's claim that she completed parenting classes in Montgomery County. However, the court found that these classes consisted of general classroom instruction with other parents in attendance, not the in-home parenting program required by the case plan. Although appellant completed a psychiatric consultation, she failed to follow through with additional visits, or to take the prescribed medication. The court also considered the fact that appellant completely failed to have a psychological evaluation, to meet with the Board of Developmental Disabilities, or to participate in an observed visit with the child. Accordingly, we find no error in the court's decision that permanent custody was in the best interest of the child. Appellant's second assignment of error is overruled.

{¶ 53} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.